St. Joseph Lead Company and Koppers Company, Inc., Appellants, *v.* Potter Township, Appellant.

Argued October 8, 1959.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and MCBRIDE, JJ.

reargument refused February 12, 1960.

*Harold F. Reed, Jr.,* with him *Leonard L. Ewing,* and *Reed, Ewing, Orr & Reed,* for plaintiffs.

*Gustav W. Wilde,* with him *J. Frank Kelker,* and *Burgwin, Ruffin, Perry & Pohl,* for defendant.

OPINION BY MR. JUSTICE COHEN, December 30, 1959:

These are separate appeals by the defendant Township of Potter and by the plaintiffs, St. Joseph Lead Company and Koppers Company, Inc., from the final decree of the Court of Common Pleas of Beaver County, Pennsylvania. Under the decree, the supervisors of defendant township were enjoined from issuing general obligation bonds in the sum of $300,000 or any part thereof, for the purpose of creating a revolving fund for the construction of a contemplated water works system, and were further enjoined from levying an *ad valorem* tax on plaintiffs' property for the purpose of maintaining said revolving fund or paying the contemplated general obligation bonds.

The facts pertinent to the determination of this case are few. The residents and supervisors of defendant township, a township of the second class of Beaver County, desiring to construct and maintain a permanent water supply system, have attempted to do so by means of issuing general obligation bonds and by levying an *ad valorem* tax in order to retire said bonds. On March 21, 1957, the supervisors enacted a desire ordinance submitting to the electorate the question whether to increase the township's indebtedness from zero to $300,000. The stated purpose was to provide funds for the creation of a revolving fund to be used for making permanent water supply improvements. The intention of the supervisors was and is to use the proposed funds to pay for the contemplated system in its entirety ($270,000) and to amortize the bonded indebtedness over a period of years with the proceeds of an annual 5 mills tax on all taxable real property within the township. This tax would not be used to maintain the revolving fund created by the issuance

of the bonds, but instead would be used to liquidate the bonds. On May 21, 1957, the electorate approved the proposed action by a vote of 164 to 38.

Each of the plaintiffs, St. Joseph Lead Company and Koppers Company, Inc., owns and operates a large manufacturing establishment in the township. Together they own 92.3% of all taxable real property situate in the township. Each owns and operates an independent water supply system which is adequate for all its needs, present and contemplated. Neither plaintiff intends to make use of the proposed water system. On June 25, 1957, the plaintiffs filed their complaint in equity which after hearing led to the present injunction.

Plaintiffs offer two grounds for the issuance of the injunction, (1) that the proposed means of financing the system would constitute a taking of plaintiffs' property in violation of the Pennsylvania and Federal Constitutions, and (2) that a second class township does not have the necessary statutory authority to finance the construction of a water system through the issuance of general obligation bonds. The court below negatived the first contention, but sustained the second.

Is the proposed action authorized by the Second Class Township Code? Act of May 1, 1933, P.L. 103, art. I, §101, as amended by Act of July 10, 1947, P.L. 1481, §1, 53 P.S. §65101 et seq. In the ownership and operation of a water facility, the municipality stands on the same footing as a private corporation. *Jolly v. Monaca Borough*, 216 Pa. 345, 65 Atl. 809 (1907). Townships, however, possess and exercise only such powers as are granted by the legislature in express words or are necesarily or fairly implied in or incident to those expressly granted or those which are indispensable to its declared objects and purposes. *Pennsylvania Railroad Company's Case*, 213 Pa. 373, 62 Atl. 986 (1906); *Herrington's Petition*, 266 Pa. 88, 109 Atl.

791 (1920); 1 Dillon on Municipal Corp. (4th ed.), sec. 89. As Mr. Justice KEPHART stated, "a township . . . may act only through powers that have been conferred on them by the legislature, or a necessary implication of power associated with a given function. When a municipality desires to create a debt or borrow money, there must be some antecedent legislative authority either direct or implied from the necessity of performing a duty which must involve the spending of money." *Georges Township v. Union Trust Co.*, 293 Pa. 364, 368-9, 143 Atl. 10 (1928).

Prior to the enactment of the Act of July 10, 1947, P.L. 1481, 53 P.S. §65101 et seq., the Code (Act of May 1, 1933) only authorized second class township supervisors to enter into contracts with private corporations or adjacent municipalities, which owned water works, so as to provide water for private and public uses, and to lay water lines which connected with the adjacent system. The Code, moreover, provided only one means of financing such water system construction. It required that the charge for construction be assessed upon the properties accommodated or benefited by assessment, either in proportion to frontage on the mains or in proportion to benefits. Such was the law until the enactment of the Act of July 10, 1947. Among many additional powers granted to the supervisors of a second class township was the first statutory authority to construct a system for the supply of water. "In the manner hereinafter provided, to provide a supply of water for public or private uses in the township, or a part thereof, and to finance and assess the cost thereof, to provide for the construction of necessary lines and works therefor, and to charge, and to collect water rentals." 53 P.S. §65731. Any construction under the authority granted and the financing thereof must be carried out "in the manner hereinafter provided." To determine the legislative intent of

such language, we must examine the other amendments to the Code, passed as part of the same Act.

The first pertinent reference appears in Article IX, under Taxation and Finance. In new section 910, 53 P.S. §65910, (Revolving Fund; Special Tax; Bond Issue), authority was granted to the townships to levy an annual property tax not to exceed 5 mills "for the purpose of *creating* and *maintaining* a revolving fund" for water supply improvements "prior to the collection of the cost and expense" from the abutting property owners. Such revolving fund can "also be *begun* by funds raised through the issuance of bonds . . . in the manner provided by law." Section 911 (Repayments Into Revolving Fund), another new section, provides that "when the cost and expense . . . of the construction of . . . water . . . improvement, . . . which has been *aided* in its construction from the said revolving fund . . . shall have been assessed and collected" from the abutting property owners, "it shall be applied to the credit of said revolving fund to the extent of the withdrawal therefrom for such purpose." (Emphasis supplied). Such language is not subject to more than one meaning. It is clear and unambiguous. The revolving fund is to be *maintained,* not completely exhausted on one project, unless *all* of the cost of the improvement can be assessed against the abutting property owners. The fund, moreover, is to be used for the construction *prior to the collection of the cost from the abutting owners.* The alternate method provided is that *such* a revolving fund may also be *begun* by funds raised through the issuance of bonds. The fund must still be maintained, and the cost must still be collected from the abutting owners. Use of the language *"aided* in its construction from the said revolving fund" also indicates a legislative intent that the fund be used to assist a project, not to cover the entire cost. And after assessing and collecting the

cost, it must be *credited* to the fund in the amount withdrawn.

Other amendments reinforce this conclusion. In Article XVI, under Water Supply, section 1604, 53 P.S. §66604, was amended to authorize the supervisors to *acquire* and *establish* a water system. A new provision, section 1609.1, 53 P.S. §66609.1 (Non-Debt Revenue Bonds; Water Rents), was added to provide the supervisors with a means of financing the acquisition of a water supply. Non-debt revenue bonds can be issued, secured solely by a pledge of the charges for water service. This section relates to the general power of the supervisors and serves to clarify the language "in the manner hereinafter provided."

Section 1610, 53 P.S. §66610, now titled—Assessment, was amended to expressly provide an alternative to the issuance of non-debt revenue bonds. Assessment of the properties benefited by certain specified methods was prescribed.[1]

---

[1] "In lieu of issuing and selling non-debt revenue bonds, as provided in section one thousand six hundred nine point one of this act, the township supervisors may provide for the payment of the cost of water lines or water system in the township or in districts thereof by an assessment upon the properties accommodated or benefited in either of the following methods:

"(a) By an assessment, pursuant to a resolution or ordinance of the board of supervisors, of each lot or piece of land in proportion to its frontage abutting on the mains, allowing such reduction in the case of properties abutting on more than one main as the resolution or ordinance may specify. No assessment by frontage shall be made on properties of such a character as not to be lawfully subject to such manner of assessment, and each abutting property shall be assessed with not less than the whole amount of the benefit accruing to it and legally assessable; or

"(b) By an assessment upon the several properties abutting on the mains in proportion to benefits. The amount of the charge on each property shall be ascertained as hereinafter provided.

"When there is more than one district, the assessment in each district may be by different methods. 1933, May 1, P. L. 103, art. XVI, §1610; 1947, July 10, P. L. 1481, §42."

Upon an examination of the Act of 1947, we find no authority in the Township of Potter to finance a new water system in the manner contemplated. The authority granted to acquire or establish a water system is strictly limited to the manner provided in the act. The Second Class Township Code requires the cost of the project to be assessed against and collected from the abutting property owners. The amount withdrawn from the revolving fund must be redeposited so that the fund will be maintained at the amount initially deposited. A revolving fund cannot be created for a project which would require use of all the fund, such as the one contemplated by the township, unless it is first established that the cost can be assessed, collected and redeposited in the fund. There is nothing to indicate an authorization to issue general obligation bonds. Nor is there any indication that such power should be implied. This is especially true when the legislature has specified the precise methods available to the townships for financing a new water system.

Only brief mention need be made of the Act of June 30, 1959, P. L. 495, which amended section 910 of the Act of 1947, 53 P.S. §65910. The title to the 1947 Act was amended by adding *"clarifying* the powers of township supervisors regarding the issuance of bonds to create a revolving fund." (Emphasis supplied). The section itself was amended by the addition of the underscored words in the following sentence. "Any such revolving fund may also be begun by funds raised through the issuance of *general obligation* bonds of the township. . . ." It is elementary that the legislature cannot create authority retroactively simply by passing "clarifying" legislation. The intent of the legislature must be determined as of the time the original act was passed. If anything, the 1959 Act indicates that the previous statute meant the exact contrary. Certainly our legislature is not presumed to perform a

useless act. Since the change was made after a considerable lapse of time and the intervention of other sessions of the legislature, the radical change in phraseology would indicate an intention to supply a provision not embraced in the former statute.

We therefore hold that the injunction granted by the lower court was properly issued. Because we find no statutory authority for the proposed bond issue and tax, we find it unnecessary to reach the constitutional questions raised by the plaintiffs.

The decree of the court below is affirmed, with costs on the township.