734 A.2d 840

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Louis SHAFFER, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 17, 1998.

Decided July 21, 1999.

Thomas R. Ceraso, Greensburg, for Louis Shaffer.

Andrea F. McKenna, Robert A. Graci, Harrisburg, for the Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

We granted allowance of appeal in this matter to determine whether the Superior Court erred in holding that the legislature's amendment of the Pennsylvania Corrupt Organizations Act (Pa.C.O.A.), 18 Pa.C.S. § 911 et seq., to include wholly illegitimate enterprises, applied to criminal activity that occurred under the Act in effect prior to the amendment, which this Court interpreted as applying solely to legitimate enterprises in *Commonwealth v. Besch,* 544 Pa. 1, 674 A.2d 655 (1996). For the reasons that follow, we find that the Superior Court erred. Accordingly, we reverse its decision.

Appellant was found guilty by a jury of single counts of possession of a controlled substance, possession with intent to deliver a controlled substance, delivery of a controlled substance, criminal conspiracy, corrupt organizations and corrupt organizations (conspiracy). He was sentenced to a term of imprisonment of forty-eight to ninety-six months for delivery of a controlled substance and concurrent terms of twenty-seven to sixty months for each of the conspiracy and corrupt organization convictions.[1]

Appellant appealed the judgment of sentence to the Superior Court. While his appeal was pending, this Court issued its decision in *Besch,* where we interpreted the applicable Pa. C.O.A. as not encompassing the prosecution of wholly illegitimate enterprises. Accordingly, Appellant argued that because the charges relating to his corrupt organization convictions stemmed solely from the government's allegation of his participation in a wholly illegitimate drug enterprise, his convictions could not stand.[2] The Superior Court rejected this argument, noting that

> [i]f *Besch* were the last relevant pronouncement concerning the scope of the corrupt organizations statute, we would be

---

1. A more detailed factual history is contained in the Superior Court's opinion below. *Commonwealth v. Shaffer,* 696 A.2d 179, 180–182 (Pa.Super.1997).

2. There is no dispute among the parties that the enterprise at issue here was a wholly illegitimate drug enterprise.

constrained to reverse appellant's conviction. It is not. Within two weeks after the Besch decision, the Pennsylvania legislature amended the statute, and in so doing expressed its disagreement with the supreme court's ruling.[3] The legislature stated that it never intended to exempt illegal or illegitimate businesses from the reach of the Act. *Shaffer*, 696 A.2d at 183. Former Senator Michael Fisher explained the House of Representatives' motive in seeking to amend the Pa.C.O.A.. He stated before the Senate:

> [B]ut most importantly, Mr. President, the House of Representatives, in the action which they took on April 30, added amendments to that bill *in an attempt to overrule* the decision of the majority, the four person majority of the Pennsylvania Supreme Court on April 17.

S.B. 1172, 180th Legis.; Pa. Legis. Journal No. 36, at 2028 (June 5, 1996) (emphasis added).

The Superior Court found the foregoing legislative action controlling regarding the interpretation to be given the Pa. C.O.A. Moreover, because prior decisions of the Superior Court, and one non-precedential opinion of this Court, had interpreted the Pa.C.O.A. in accordance with the legislature's subsequently stated intent, the Superior Court concluded that our decision in *Besch* had no effect on its determination. *See id.*, 696 A.2d at 182, citing *Commonwealth v. Yacoubian*, 339 Pa.Super. 413, 489 A.2d 228 (1985), and *Commonwealth v. Wetton*, 537 Pa. 100, 641 A.2d 574, 579 n. 5 (1994) (Zappala, J., Opinion in Support of Reversal, wherein *Yacoubian* was cited to with approval in dicta). *Yacoubian*, where the Superior Court held that Pennsylvania's racketeering act could be read broadly enough to encompass illegitimate as well as legitimate "enterprises" and rejecting the argument that the preamble limited application of the statute to legitimate entities, was overruled in *Besch*.

---

**3.** Although the Superior Court stated that the legislature amended the Pa.C.O.A. within two weeks of our decision in *Besch*, in actuality, the House of Representatives made its proposed amendment, which was then sent to the Senate within two weeks. The actual legislative amendment to the Pa.C.O.A. occurred on June 19, 1996, effective immediately, two months after our April 17, 1996 decision in *Besch*.

While the Superior Court recognized a duty to maintain and effectuate the decisional law of this Court, given the legislature's stated intent contrary to our interpretation in *Besch,* the court concluded that

> to apply the rationale of *Besch* in disposing of the instant case would be to ignore the intent of the legislature, despite the *Besch* court's belief that it correctly had discerned and applied same[,]

*Shaffer,* 696 A.2d at 183. By its holding, the Superior Court treated the legislature's action as effectively overruling *Besch.*

We must now decide what effect, if any, the legislature's subsequent amendment of the Pa.C.O.A. had on our prior decision in *Besch* since, as noted by the Superior Court, "[i]f *Besch* were the last relevant pronouncement," Appellant's conviction would be reversed.[4]

Appellant was charged with and convicted of violating the same provisions of the Pa.C.O.A. as the appellant in *Besch.* These sections, 18 Pa.C.S. §§ 911(b)(3) & (4), provide:

> (3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

> (4) It shall be unlawful for any person to conspire to violate any of the provisions of paragraph (1), (2) or (3).

The Pa.C.O.A. defined "enterprise" as

> any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce.

18 Pa.C.S. § 911(h)(3).

Whether Appellant could properly be charged and convicted under the foregoing provisions of the Pa.C.O.A. in effect at the time his criminal activity occurred depended upon whether the

---

**4.** We wish to make clear that this is the only issue before us. The parties do not dispute that if the amendment did not affect our decision in *Besch,* Appellant's conviction must be reversed. The Commonwealth, however, in the alternative, advocates that we overrule *Besch* and affirm Appellant's conviction.

Pa.C.O.A. embraced wholly illegitimate enterprises. Once the legislature finished its efforts, and the Pa.C.O.A. was signed into law, it was for the Courts, ultimately this Court, to interpret the legislative language. We did so in *Besch*.

After examining the extensive and specific preamble to the Pa.C.O.A., this Court concluded

> [t]here is no escaping the clear intent of this statute. The General Assembly went to great pains to set forth the parameters of this piece of legislation. Pa.C.O.A. is directed at preventing the infiltration of legitimate business by organized crime in order to promote and protect legitimate economic development within Pennsylvania. Although the Commonwealth acknowledges this to be the precise intent of the General Assembly in enacting Pa.C.O.A., they choose to ignore same. However, once the intent of the General Assembly has been ascertained that intent cannot be ignored, rather, it must be given effect.

*Besch*, 674 A.2d at 659 (citations omitted).

■ Thus, based upon our interpretation, the applicable Pa.C.O.A. that Appellant was convicted of violating did not apply to wholly illegitimate enterprises. *See Harry C. Erb, Inc. v. Shell Construction Co.*, 206 Pa.Super. 388, 213 A.2d 383 (1965), citing *City of Philadelphia v. Schaller*, 148 Pa.Super. 276, 25 A.2d 406 (1942) (judicial construction of a statute becomes part of the legislation from the time of its enactment); *see also Commonwealth v. Peters*, 453 Pa. 615, 306 A.2d 901 (1973) (per curiam order of this Court noting that our decision interpreting Pa.R.Crim.P. 118 was the law in this Commonwealth after the effective date of the rule).

■ Although the legislature amended the act to state a different meaning of "enterprise" as follows:

> (3) 'Enterprise' means any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce *and includes legitimate as well as illegitimate entities* and governmental entities.

18 Pa.C.S. § 911(h)(3), *as amended*, June 19, 1996, immediately effective (emphasis added), the amendment could only be applied prospectively. Section 1953 of the Statutory Construction Act, entitled "Construction of amendatory statutes," provides:

> Whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended, and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, *and the new provisions shall be construed as effective only from the date when the amendment became effective.*

1 Pa.C.S. § 1953 (emphasis added). Moreover, amendatory statutes are to be construed retroactively only if such construction is clearly indicated under the provisions of the statute. *Commonwealth v. Scoleri*, 399 Pa. 110, 160 A.2d 215, 227 (1960).

 The legislature failed to clearly indicate in the amendatory act that the amendment of the Pa.C.O.A. should be applied retroactively. Although the legislative history accompanying the amendment indicated that certain legislators desired to overrule our decision in *Besch*, the legislature lacked authority to do so. *See Commonwealth v. Sutley*, 474 Pa. 256, 378 A.2d 780, 784 (1977), citing *Greenough v. Greenough*, 11 Pa. 489 (1849) (the legislature cannot, by an act of assembly, overrule a judicial decision). Nor can the legislature create retroactive authority by passing "clarifying" legislation. *St. Joseph Lead Company and Koppers Company, Inc. v. Potter Township*, 398 Pa. 361, 157 A.2d 638, 642 (1959) ("[I]t is elementary that the legislature cannot create authority retroactively simply by passing 'clarifying' legislation. The intent of the legislature must be determined as of the time the original act was passed.") [5]

5. We are not unaware of our decision in *Commonwealth v. Chamberlain*, —— Pa. ——, 731 A.2d 593 (1999), where we concluded that the

The Superior Court's decision, in treating *Besch* as a nullity based upon the legislature's subsequent amendment of the Pa.C.O.A., was clearly erroneous. The Superior Court, in essence, reinterpreted the statutory language of the Pa.C.O.A. in a manner that was contrary to our interpretation in *Besch.* However, as the foregoing makes clear, once this Court interpreted the legislative language contained in the applicable act, our interpretation became a part of the legislation from the date of its enactment. The legislature's failure to clearly set forth its intent in the original act could only be remedied prospectively by the later amendment. Thus, the Superior Court violated its duty to effectuate the decisional law of this Court since our interpretation of the prior enactment controlled the matter.[6]

As Superior Court erred in affirming Appellant's convictions based upon Sections 911(b)(3) & (4), 18 Pa.C.S. §§ 911(b)(3) & (4) of the Pa.C.O.A., we now reverse its decision in this regard.

Justice CASTILLE files a concurring opinion.

Justice NEWMAN and Justice SAYLOR concur in the result.

legislature's amendment of Section 1420 of the County Code, 16 P.S. § 1420, which was obviously amended to correct our interpretation of the legislative intent of Section 1420 in *Commonwealth v. Lawson,* 548 Pa. 588, 699 A.2d 1246 (1997), "eviscerated the holding and rationale of *Lawson.*" *Chamberlain,* 731 A.2d at 599. In amending Section 1420, however, the legislature, unlike here, specified in subsection (d) of the amendment, that it "shall apply to all cases pending on the effective date of this subsection and all cases thereafter, including, but not limited to, those cases on post-trial or on appeal."

**6.** We wish to note that we are extremely troubled by the Superior Court's seemingly effortless disregard of our precedent established in *Besch.* While we do not wish to speculate regarding the court's motives in this regard, we feel it necessary to, once again, remind the Superior Court of its duty and obligation to follow the decisional law of this Court. It was only several months ago, in *Commonwealth v. Randolph,* 553 Pa. 224, 718 A.2d 1242 (1998), that we found it necessary to admonish the Superior Court in a similar fashion. In *Randolph,* we emphasized that "[i]t is a fundamental precept of our judicial system that a lower tribunal may not disregard the standards articulated by a higher court." *Id.* at 1245. This canon is equally relevant to the within case and we again emphasize its applicability.

CASTILLE, Justice, concurring.

I continue to believe that this Court erred when it held in Commonwealth v. Besch, 544 Pa. 1, 674 A.2d 655 (1996), that the legislature intended for the Pennsylvania Corrupt Organizations Act ("the Act"), 18 Pa.C.S. § 911 et seq., to encompass only legitimate businesses enterprises. However, because *Besch* was the law at the time the Superior Court reviewed the judgment of sentence and I believe that the Superior Court erred in applying the amendments to the Act retroactively, I am constrained to concur in the result reached by the majority.[1]

In *Besch,* the majority held that in order to be subject to the Act, the Commonwealth needed to establish that the "enterprise" was connected to a legitimate business; thus, a connection to an illegitimate business, such as a drug cartel, was not covered under the Act. At the time of the majority's holding, the Act defined "enterprise" as "any individual, partnership, corporation, association, or other legal entity and any union or **group of individuals associated in fact although not a legal entity**, engaged in commerce." 18 Pa.C.S. § 911(h)(3) (emphasis added). The plain language of the statute indicated that the legislature intended for the Act to apply to both legitimate and illegitimate activities. Nevertheless, the majority in *Besch* disagreed.

In ruling that the Act applied to only legitimate enterprises, the majority took a path divergent from the United State Supreme Court, which in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), considered the identical definition of "enterprise" found in the federal Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1961(4),[2] and concluded that:

1. As noted in the majority opinion, the Act was amended in 1996 to provide that PCOA applied to illegitimate as well as legitimate enterprises.

2. Under RICO, enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

RICO is equally applicable to a criminal enterprise that has no legitimate dimension or has yet to acquire one. Accepting that the primary purpose of RICO is to cope with the infiltration of legitimate businesses, applying the statute in accordance with its terms, so as to reach criminal enterprises, would seek to deal with the problem at its very source.

*Id.* at 591.[3]

The majority justified ignoring the plain language of the statute, as well as the United States Supreme Court's interpretation of the identical language, based on one sentence in the Act's preamble which states that:

The vast amounts of money and power accumulated by organized crime are increasingly used to infiltrate and corrupt legitimate businesses operating within the Commonwealth, together with all of the techniques of violence, intimidation, and other forms of unlawful conduct through which such money and power are derived.

18 Pa.C.S. § 911(a)(3). From this, the majority in *Besch* went on to conclude that:

There is no escaping the clear intent of this statute. The General Assembly went to great pains to set forth the parameters of this piece of legislation. Pa.C.O.A. is directed at preventing the infiltration of legitimate business by

---

**3.** The decision in *Turkette* was consistent with a number of federal cases which had held that the definition of enterprise under the RICO statute included illegitimate as well as legitimate enterprises. *See, e.g., Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983); *United States v. Errico,* 635 F.2d 152, 155 (2d Cir.1980) *cert. denied,* 453 U.S. 911, 101 S.Ct. 3142, 69 L.Ed.2d 994 (1981); *United States v. Provenzano,* 620 F.2d 985 (3d Cir.), cert. denied, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980); *United States v. Whitehead,* 618 F.2d 523, 525 n. 1 (4th Cir.1980); *United States v. Aleman,* 609 F.2d 298, 304–05 (7th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Rone,* 598 F.2d 564, 568–69 (9th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Swiderski,* 593 F.2d 1246, 1248–49 (1978), cert. denied, 441 U.S. 933, 99 S.Ct. 2056, 60 L.Ed.2d 662 (1979); *United States v. Elliott,* 571 F.2d 880, 896–98 (5th Cir.), cert. denied, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).

organized crime in order to promote and protect legitimate economic development within Pennsylvania.

544 Pa. at 10, 674 A.2d at 659.

However, two weeks after this Court's ruling in *Besch,* the General Assembly acted to correct this Court's erroneous interpretation by beginning the process to clarify the definition of enterprise under the Act to include both legitimate and illegitimate enterprises.[4] At the time of the amendments to the Act, members of both the House of Representatives and the Senate made clear their disagreement with this Court's interpretation of the Act. For example, State Representative Albert H. Masland stated:

> Our Supreme Court, by a four-to-three vote, decided that the Pennsylvania Corrupt Organization's [sic] Act did not apply to those corrupt organizations who wholly engaged in illegal activities. In other words, they said, a corrupt organization had to also be involved in legitimate business enterprises for that to come under the purview of the Corrupt Organizations Act.... **That was not the intent,** I do not believe, of this legislature back in 1970 when the act was passed. I do not think it is our intent today, and I think we ought to join with Chief Justice Nix in his dis[s]enting opinion, along with Justices Castille and Sandra Schultz Newman, and change our act so that the rest of the Supreme Court understands what we intend.

*Commonwealth v. Shaffer,* 696 A.2d 179, 184 (Pa.Super.1997) (citing Act 55, 180th Legis. (Pa.1996)) (emphasis added). Moreover, former Senator Michael Fisher (now Attorney General) stated:

> ... [B]y concurring with the amendments added by the House of Representatives ... **we are clarifying that statute** to say that, in fact it is our intent that drug organiza-

---

4. Following the amendments the statute now provides:

"Enterprise" means any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce and includes legitimate as well as illegitimate entities and governmental entities.

18 Pa.C.S. § 911(h)(3), *as amended,* June 19, 1996.

tions and drug enterprises across Pennsylvania and other illegitimate enterprises across Pennsylvania were intended to be covered by this Statute.

*Id.* at 185 (citing S.D. 1172, 180th Legis; Pa. Legis. Journal No 36, at p. 2028–29 (June 5, 1996)) (emphasis added). The Senate went on to pass the clarifying amendment to the Act by a unanimous vote. "While statements made by legislators during the enactment process are not dispositive of legislative intent, they may be properly considered as part of the contemporaneous legislative history." *Washington v. Baxter,* 553 Pa. 434, 719 A.2d 733, 738 (1998).

Taken together, the legislative comments and the alacrity with which the General Assembly acted following the decision in *Besch,* provides ample evidence to support the conclusion that the legislature did not intend for the Act to apply only to legitimate enterprises. The majority in *Besch* erroneously determined the legislature's intent. It is well established in the Commonwealth that "[t]he failure of the General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with the legislative intent." *Fonner v. Shandon, Inc.,* 555 Pa. 370, 724 A.2d 903, 906 (1999) (citing *Commonwealth v. Willson Products, Inc.,* 412 Pa. 78, 87–88, 194 A.2d 162, 167 (1963)).[5] When the General Assembly does act to make clear that the court's interpretation is inconsistent with its legislative intent, we should follow the guidance of the legislature and, where possible, amend earlier erroneous interpretations. *See Commonwealth v. Lassiter,* 554 Pa. 586, 722 A.2d 657, 661 n. 3 (1998) ("actions undertaken in subsequent sessions of the Legislature are relevant in interpreting a statute which was passed in a previous session of the Legislature.")

**5.** Moreover, prior to the decision in *Besch,* the Superior Court had held that "the term 'enterprise' is unrestricted and sufficiently broad to include both legitimate and illegitimate enterprises." *Commonwealth v. Yacoubian,* 339 Pa.Super. 413, 489 A.2d 228 (1985). Had this been a wrong interpretation, the legislature was free to act to amend the statute, but since it did not, this Court in *Besch* should have given greater deference to the presumption that the statutory interpretation in *Yacoubian* was correct. *See Fonner,* 724 A.2d at 906.

The majority in the instant matter continues to cling to its unsupported belief that prior to the clarifying amendments by the General Assembly, the Act applied only to legitimate enterprises and that the amendments added new crimes applicable under the Act only in the future. That is not what occurred. The General Assembly in obvious disagreement with this Court's interpretation of the statute, acted to demonstrate to this Court how the Court had erred in trying to determine the General Assembly's intent that the Act cover illegitimate organizations. The majority in the instant matter is unwilling to cede its error.

Nevertheless, when the Superior Court heard this case, *Besch* was the law of this Commonwealth. Therefore, it was constrained under the doctrine of stare decisis to interpret the statute as encompassing only legitimate enterprises.[6] The Superior Court, as an intermediate appellate court, is obligated to follow and apply the decisions of the Supreme Court of Pennsylvania, even where it disagrees with this Court's decision. "If a majority of the Justices of this Court, after reviewing an appeal before us ... join in issuing an opinion, [the] opinion becomes binding precedent on the courts of this Commonwealth." *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 903 (1996).

I agree with the majority that the Superior Court's attempt to justify its decision, affirming the trial court and rejecting *Besch* based on the subsequent amendments to the Act, is flawed. The problem with the Superior Court's reasoning is that while the amendments do provide evidence that the majority in *Besch* failed to accurately ascertain the legislature's intent, the amendments do not overrule the *Besch* decision. "It is elementary that the legislature cannot create authority retroactively by passing 'clarifying' legislation." *St. Joseph Lead Co. v. Potter*, 398 Pa. 361, 368, 157 A.2d 638, 642 (1959). The legislature's failure to expressly provide that the

6. "The rule of stare decisis declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." *Commonwealth v. Tilghman*, 543 Pa. 578, 673 A.2d 898, 903 n. 9 (1996).

amendments should be applied retroactively prohibit a finding to the contrary by the courts.[7] Therefore, I believe that the Superior Court was constrained to follow *Besch,* however distastefully.

Stare decisis ensures a level of stability and clarity by providing assured guidance as to what the law is.[8] Haphazard

7. As noted by the majority, the effect of the clarifying amendments would have been different had the legislature included a savings provision such that the amendments would apply to all cases on post-trial or on appeal. *Commonwealth v. Chamberlain,* 731 A.2d 593. In *Chamberlain,* we held that the legislature's amendments to Section 1420 of the County Code, 16 Pa.S.C. § 1420 (permitting a district attorney to appoint a deputy attorney-general as an assistant) enacted less than a year after this Court's holding in *Commonwealth v. Lawson,* 548 Pa. 588, 699 A.2d 1246 (1997) (holding under section 1420, district attorney lacks authority to appoint deputy attorney general as an assistant prosecutor in a drug possession case) "eviscerated the holding and rationale of *Lawson.*" This Court went on to state that the amendments "can only be interpreted as a response to *Lawson* with the evident purpose of correcting our interpretation of the legislative intent underlying" section 1420. *Chamberlain* is distinguishable from the instant matter, because in the amendments to section 1420, the legislature included the savings provision by specifying in subsection (d) of the amendment that it "shall apply to all cases pending on the effective date of this subsection and all cases thereafter, including, but not limited to, those cases on post-trial or on appeal."

8. While I have taken a position in certain cases that stare decisis should not be followed, these situations are very limited and my position was warranted under *Ayala v. Philadelphia Bd. of Public Education,* 453 Pa. 584, 606, 305 A.2d 877, 888 (1973) ("the doctrine of stare decisis is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth process of the law to flourish.") *See, e.g., Pennsylvania State Association of County Commissioners v. Commonwealth,* 545 Pa. 324, 681 A.2d 699 (1996) (Castille, dissenting) (stare decisis should be abandoned where this Court wrongly held in *County of Allegheny v. Commonwealth of Pennsylvania,* 517 Pa. 65, 534 A.2d 760 (1987) that the state constitutional requirement that the judicial system be unified requires that the Commonwealth assume all responsibility for funding the judicial branch); *Commonwealth v. Karaffa,* 551 Pa. 173, 709 A.2d 887 (1998) (Castille, dissenting) (the decision in *Commonwealth v. Oleynik,* 524 Pa. 41, 568 A.2d 1238 (1990), holding that the submission of written instructions to the jury during deliberations was unfairly prejudicial, was wrongly decided and should be reversed. Trial courts need discretion particularly in long and complicated trials where the jury will be unable to understand or remember the legal principles given in the oral charge); *Commonwealth v. Selby,* 547 Pa. 31, 688 A.2d 698 (1997) (Castille, dissenting) (the decision in *Commonwealth v. Brion,* 539 Pa. 256, 652 A.2d 287 (1994) requiring judicial approval

reversals by the judiciary erodes a level of confidence that people place in the court system. Therefore, while I continue to believe that the decision in *Besch* was wrongly decided, I feel constrained to concur with the result reached by the majority given the absence of a "savings clause" by the legislature applying its amendments to pending cases.

before an informer wearing a consensual wiretap may enter another individual's home to record a conversation to be used by the police in an undercover investigation was erroneous. A defendant abandons any expectation of privacy by discussing his criminal involvement with another person).