J-A07030-25

2026 PA Super 95

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TYREE CHARLES MORTON :
:
Appellant : No. 870 MDA 2024

Appeal from the Judgment of Sentence Entered April 9, 2024
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0000251-2018

BEFORE: BOWES, J., OLSON, J., and STABILE, J.

OPINION BY OLSON, J.: **FILED: MAY 8, 2026**

Appellant, Tyree Charles Morton, appeals from the judgment of sentence entered on April 9, 2024, following the revocation of his probation. Upon careful consideration, we affirm revocation, vacate Appellant's sentence, and remand for resentencing.

We briefly summarize the facts and procedural history of this case as follows. On June 26, 2018, Appellant pled guilty to robbery – threat of immediate bodily injury and tampering with evidence, 18 Pa.C.S.A. §§ 3701(a)(1)(ii) and 4910, respectively. After accepting Appellant's plea, the trial court sentenced Appellant accordingly:

> [A]t Count 1 [(robbery)], which is obviously the lead case, [the trial court] impose[d] a split sentence [in] a state correctional facility for a minimum of [] thirty-six months to a maximum [of] seventy-two months for Phase one and that would be followed by Phase two, [a] consecutive five years [of] probation [with] credit for time served [from] December 9, 2017, to June 26[, 2018] for a total of six months and eighteen days.

[The trial court further] request[ed] that he be evaluated to make sure his treatment is tailored to him both psychologically and vocationally.

And then at Count 2 [(tampering with evidence), Appellant] shall … be placed on probation for two years which shall be concurrent with [] Count 1.

N.T., 6/26/2018, at 10. Thereafter, Appellant "maxed out his first phase [of] incarceration and moved to the secondary phase of his sentence, the consecutive five years of probation." Appellant's Brief at 7.

On December 18, 2023, the trial court held a hearing, at the request of the Probation Department, "in order to assign conditions to" the probationary phase of Appellant's sentence. N.T., 12/18/2023, at 2. At that hearing, Appellant's probation officer testified that the trial court had ordered a "treatment evaluation" in the original sentencing order, but "[i]t wasn't clear what type of treatment evaluation[.]" *Id.* at 3. The officer further testified that he did "not want to throw a ton of conditions at" Appellant, but requested Appellant be "reevaluated for [] mental health." *Id.* at 5. The trial court confirmed that such request

would be consistent with the order at sentencing to have those evaluations done [because] they weren't done in Phase I as [] anticipated. So [the trial court] would be simply imposing those [specific conditions of probation] on Phase II, and then any identified treatment needs would become a condition of his probation.

*Id.* at 6. Moreover, the testifying officer placed the following "special condition" of probation on the record:

[Appellant] will obtain [a] mental health evaluation from an approved treatment provider, comply with all the rules and recommendations imposed on [Appellant] by the provider,

- 2 -

and assume responsibility for all costs associated with this treatment program.

*Id.* at 10. In turn, Appellant responded that he understood the probationary conditions imposed. *Id*. at 14 and 16.

On March 14, 2024, the Commonwealth filed a notice of alleged violations of probation and requested a revocation hearing. In that notice, the Commonwealth alleged that Appellant "entered the Meadows Psychiatric Center" on February 24, 2024 and was "unsuccessfully discharged … due to [his] behavior" on March 11, 2024. Revocation Notice, 3/14/2024, at *3. More specifically, the notice stated that on March 8, 2024, Appellant was "involved in a verbal/physical altercation where [he] attacked another patient, as well as became aggressive with staff when they intervened [which] included spitting at and kicking staff." *Id.* The notice further provided that Appellant had violated the rule that he "refrain from assaultive behavior" as well as the trial court's condition to obtain a mental health evaluation and comply with all rules and recommendations imposed by the provider. *Id.*

The trial court held a revocation hearing on April 9, 2024. At the revocation hearing, counsel for Appellant stipulated that Appellant was "not contesting [and] admit[ted] to committing a violation" but wanted the trial court to know "the situation that led to the violation" began when Appellant "was hit first." N.T., 4/9/2024, at 2; *see also id.* at 4 ("[W]hile there was a fight with another patient, [Appellant] became aggressive with the staff when they intervened, including spitting and kicking the staff."). The trial court stated that "because [Appellant] didn't exactly get a successful exit from the

- 3 -

last [mental health] treatment facility[,] he's probably not a good prospect to get into another one in the foreseeable future" and that Appellant "was probably in his best facility, and it didn't go very well." *Id.* at 14-15. Ultimately, the trial court concluded, it would

> revoke [Appellant's probation] and resentence [him to] state incarceration. [The trial court believed it was] the only place [to] get [Appellant] the help [he] need[ed and] direct[ed] all [of Appellant's] medical records [to be] sent [to prison officials] so they c[ould] appropriately classify him into a facility with medication and psychological therapy so he [could] succeed on the outside.
>
> [Accordingly, the trial court imposed] a term of not less than [three] nor more than 10 years[' imprisonment] in a state institution.

*Id.* at 17-18. Appellant filed a timely post-sentence motion on April 18, 2024. The trial court denied relief by order entered on April 24, 2024. This timely appeal resulted.[1] On November 20, 2025, this Court entered an order staying the appeal pending the *en banc* decision in *Commonwealth v. Seals*, 1350-1352 MDA 2024. Our Court decided *Seals* on February 17, 2026 and,

---

[1] On May 15, 2024, Appellant filed a petition to reinstate his appellate rights *nunc pro tunc*. The trial court granted relief by order entered on June 12, 2024. Thereafter, Appellant filed a timely notice of appeal on June 24, 2024 and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 23, 2024, the trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) finding Appellant's claims waived because there was no transcript from the April 9, 2024 revocation hearing filed in the certified record. Subsequently, the Commonwealth and Appellant filed a joint stipulation pursuant to Pa.R.A.P. 1926 to supplement the record to include the missing transcript. Accordingly, on September 16, 2024, the trial court filed a supplemental Rule 1925(a) opinion addressing the merits of Appellant's appellate claims with citations to the revocation transcript.

accordingly, this case is currently ripe for appeal. *See Commonwealth v. Seals*, -- A.3d --, 2026 PA Super 29 (Feb. 17, 2026) (*en banc*).

On appeal, Appellant presents the following issues for our review:

I.    … Did the [trial c]ourt revoke probation without statutory authority?

II.   [Whether the imposition of] a statutory maximum sentence upon a first technical violation of probation … constitute[s] an abuse of discretion and constitute[s] an excessive and unreasonable sentence considering [Appellant's] rehabilitative needs[?]

Appellant's Brief at 6.

In his first issue presented, Appellant argues that when he was initially sentenced in June 2018, the trial court "requested the state prison system" conduct a mental health evaluation with Appellant, but such request "was not made explicitly as a condition of his consecutive period of probation" and, instead, "added conditions of supervision without showing he was a clear danger." *Id.* at 6. As a result, Appellant posits that when his probation was subsequently revoked, the trial court did so without statutory authority. *Id.*; *see also id.* at 12 (Because the trial court lacked the authority to impose those conditions long after the original sentence, [Appellant] could not violate those conditions. The revocation [was] based on conditions with no legal authority [] and his revocation cannot stand.").

We adhere to the following standards of review. "Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence

of an error of law or an abuse of discretion." **Commonwealth v. Shires**, 240 A.3d 974, 977 (Pa. 2020) (citation omitted). "In an appeal from a sentence imposed after the court has revoked probation, we can review the validity of the revocation proceedings, the legality of the sentence imposed following revocation, and any challenge to the discretionary aspects of the sentence imposed." **Id.** (citation omitted).

Moreover, we have stated:

> The [trial] court has inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding ... that a person presents an identifiable threat to public safety. [42 Pa.C.S.A.] § 9771(a).

> Upon proof at a hearing of the violation of specified conditions of probation, the court is authorized to increase the conditions, sanction the probationer pursuant to a court-established program, or revoke an order of probation. **Id.** § 9771(b), (d).

> Revocation and resentencing are warranted if, in the face of a new criminal act or the violation of a condition of probation, the court finds that probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity. Probation revocation is an integral element of the original conditional sentence. If evidence establishes that the probationer has violated the conditions of probation, the trial court must make a finding on the record that a violation occurred and then proceed to resentence the petitioner. The court may only revoke a defendant's probation for a technical violation, however, if the preponderance of the evidence establishes that the defendant violated a specific condition of probation or committed a new crime.

**Seals**, 2026 PA Super 29, at * 5 (internal quotations and case citations omitted).

This Court has recognized:

> The failure of a court to attach specific conditions to a probation order does not render those conditions illegal. If properly ordered as specific conditions of probation a violation of any of those conditions may form the basis to revoke probation. The failure to attach specific conditions to a probation order at sentencing does not render a sentence illegal; the sentence imposed simply does not have conditions attached to probation.

***Commonwealth v. Burns***, 281 A.3d 1059, at \*4 (Pa. Super. 2022) (non-precedential decision) (internal citations omitted).[2]

Upon plenary review of the certified record, we reject Appellant's factual assertion that the trial court did not impose probation conditions at the original time of sentencing. As set forth above, as part of its sentence following Appellant's guilty plea on June 26, 2018, the trial court imposed a sentence of incarceration of 36 to 72 months for robbery with a consecutive five years of probation and credit for time-served. N.T., 6/28/2018, at 10. Immediately thereafter, the trial court ordered that Appellant "be evaluated to make sure his treatment is tailored to him both psychologically and vocationally." ***Id.*** Appellant did not appeal that determination.[3]

---

[2] ***See*** Pa.R.A.P. 126(b)(2) (stating that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[3] Appellant could have challenged the condition when imposed but did not and such a claim implicates the discretionary aspects of sentencing, not the legality of sentence. ***See Commonwealth v. Starr***, 234 A.3d 755, 765 (Pa. Super. 2020) ("[T]he way that a trial court fashions a condition of probation [] generally constitutes a challenge to the discretionary aspects of a sentence rather than to its legality), *citing* ***Commonwealth v. Houtz***, 982 A.2d 537, 538 (Pa. Super. 2009) (stating issue regarding court's imposition of internet restriction as condition of probation "challenges the discretionary aspects of sentencing, not the legality of the sentence imposed"); ***Commonwealth v.***
*(Footnote Continued Next Page)*

At the subsequent proceeding on December 18, 2023, there was no dispute that Appellant was never evaluated for mental health treatment as ordered. Instead, the parties coalesced around the notion that the original

***Yockey***, 158 A.3d 1246 (Pa. Super. 2017) (holding Yockey's claim that imposition of probation condition prohibiting him from accessing the internet did not relate to his rehabilitation was a challenge to the discretionary aspects of his sentence, not the legality of the sentence). "[I]ssues challenging the discretionary aspects of sentencing must be raised in a post-sentence motion or by raising the claim during the sentencing proceedings [and a]bsent such efforts, an objection to a discretionary aspect of a sentence is waived." ***Commonwealth v. Mann***, 820 A.2d 788, 794 (Pa. Super. 2003); ***see also*** Pa.R.A.P. 302(a) ("issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Moreover, "we have previously explained that an appeal from revocation proceedings, such as this one, is an inappropriate vehicle for a challenge to an original sentence." ***Commonwealth v. Crum***, 323 A.3d 233 (Pa. Super. 2024) (non-precedential decision), *citing* ***Commonwealth v. Beasley***, 570 A.2d 1336, 1338 (Pa. Super. 1990) (where appellant challenges original sentence in appeal from probation revocation proceedings, approach is incorrect for two reasons: (1) any collateral attack on underlying conviction must be raised pursuant to PCRA, and (2) focus of appeal is on probation revocation hearing and sentence imposed consequent to probation revocation). Similarly, "a panel of this Court recently held that the appellant could not challenge his 2009 and 2018 sentences, where the appeal was from a probation revocation sentence entered in 2022." ***See Crum***, 323 A.3d at 233, *citing* ***Commonwealth v. Diaz***, 314 A.3d 852, 855 (Pa. Super. 2024) (non-precedential decision) ("[T]he only judgment of sentence before this Court on direct appeal is the one entered on June 23, 2022 [following revocation. P]rior sentences, including those imposed in 2009 and 2018, are of no moment because they have long been final. [Diaz] is therefore precluded from disturbing those prior sentences, when only his present sentence is before us."); ***see also Commonwealth v. Jeffery***, 329 A.3d 670 (Pa. Super. 2024) (finding Jeffery's underlying judgment of sentence from 2009 "long since final" where "the only judgment properly before us" was his challenge to "the 2023 judgment of sentence" and that "[c]hallenges to the legality of sentence may be raised on direct appeal or pursuant to the PCRA which is the exclusive vehicle for obtaining post-conviction collateral relief.") (citations omitted).

sentence clearly ordered a mental health evaluation but did not set forth the precise timing of said evaluation – either while incarcerated or as a condition of his probation. As such, the trial court stated that the Probation Department's request for a subsequent hearing amounted to clarification of the original sentencing order, not a modification of probation or the addition of special conditions of probation as Appellant suggests. The Probation Department requested that Appellant be "reevaluated for [] mental health" and it agreed to follow the diagnosis, opinion, and recommendations of the mental health professionals. N.T., 12/18/23, at 5-6. As the trial court noted, such request was "consistent with the order at sentencing" but was not "done in Phase I [during Appellant's incarceration]" as the trial court "had anticipated." *Id.* at 6. Accordingly, the trial court properly reaffirmed that a mental health evaluation and treatment was originally ordered but clarified that it was ordered in conjunction with probation. *Id.* Again, Appellant did not object or otherwise appeal that facet of his original sentence. As such, Appellant acquiesced to mental health treatment as a component of the probationary phase of his original sentence for robbery.

Furthermore,

when a probationer stipulates to a probation violation, he surrenders certain rights, including his right to have the Commonwealth prove the violation; therefore, a probationer's stipulation to a probation violation must be voluntary and supported by the record.

Where a defendant enters a negotiated stipulation admitting to a probation violation, and the court finds that he has entered the

- 9 -

> stipulation knowingly, voluntarily, and intelligently, sufficient grounds support the revocation.
>
> Moreover, a defendant is bound by the statements he makes in open court while under oath and he may not later contradict the statements he made.

*Commonwealth v. Harris*, 281 A.3d 1042 (Pa. Super. 2022) (non-precedential decision) (internal citations and quotations omitted).

As set forth above, we conclude that the trial court attached a specific condition to its probation order, requesting that the Probation Department have Appellant evaluated psychologically, and then subsequently tailor supervisory treatment accordingly. Thereafter, Appellant did not contest the alleged violations and admitted to committing them at the revocation hearing held on April 9, 2024. *See* N.T., 4/9/2024, at 3. Trent Marsh, an employee with the Meadows Psychiatric Center testified that Appellant and another patient engaged in a physical altercation and that while restraining Appellant per protocol, Appellant was "threatening to spit on staff" and "was kicking staff during this struggle" when "one [] co-worker[] ended up getting a concussion [and] had to be sent to the emergency room." *Id.* at 6. Appellant was then unsuccessfully discharged from the program due to his assaultive behavior. By stipulating to violations of his probation, Appellant acknowledged that there were probationary conditions imposed and that he violated them. Appellant cannot now complain that he did not understand the conditions of probation imposed as he is bound by the statements he made in open court while under oath and he may not later contradict the statements he made. Regardless,

- 10 -

based upon our standard of review and review of the certified record, we conclude that the trial court properly determined, by a preponderance of the evidence, that Appellant violated specific conditions of probation to warrant revocation. Accordingly, for all of the foregoing reasons, there is otherwise no merit to Appellant's first issue presented and we affirm the trial court's decision to revoke probation.

In his second issue presented, Appellant claims that "imposition of a sentence of [three to] 10 years [of imprisonment] was unduly excessive in light of the technical violations." Appellant's Brief at 23. More specifically, in sum, Appellant posits:

> It is uncontested that the [trial] court could have sentenced [Appellant] to a legal sentence to [four to] 14 additional years [of] imprisonment for a felony of the first degree[, robbery,] after considering the total time [Appellant] had already served. However, while the [S]entencing [C]ode's guidelines do not apply, the leap from probation, **which was technically violated** but was a result of mental health, a term of at least [three years' incarceration] raises a question of excessiveness. The [trial] court's sentence constitutes an abuse of discretion when the **violations are minor**, and do not demonstrate any rational relationship to the sentence imposed. The circumstance of [Appellant's] revocation originated from mental health. [Appellant] had an altercation with another patient, it came to blows, and staff were injured. However, these difficulties present a classical problem of the intersection of mental health and criminal justice.
>
>         \*          \*          \*
>
> However, the [trial c]ourt's jump in remedy, particularly the increased nature of the maximum penalty, constitutes a steep and unsupported increase in punishment. The original sentence of [five] years of probation was replaced by not only prison, but a punishment which ultimately increased [Appellant's] aggregate punishment (a total of 11 years originally versus a total of 16).

- 11 -

*Id.* at 24-26 (emphasis added). Appellant contends that his "actual rehabilitative needs were not considered" and, as such, this Court should remand the case for resentencing. *Id.* at 27-28.

As previously stated, "the court may only revoke a defendant's probation for a technical violation … if the preponderance of the evidence establishes that the defendant violated a specific condition of probation or committed a new crime." *Seals*, 2026 PA Super 29, at * 5. On June 11, 2024, our legislature "amended multiple Sentencing Code provisions pertaining to probation," including "Act 44." *Id.*, *citing* Act of Dec. 14, 2023, P.L. 381, No. 44, § 9. As we explained in *Seals*,

> prior to Act 44, [S]ection 9771(b) allowed the trial court, upon revocation, to choose from any of the sentencing options that existed at the time of the original sentencing, including incarceration. Section 9771(b) was implicitly limited by 9771(c), which prohibited a trial court from imposing a resentence of total confinement unless the trial court found that the defendant was convicted of another crime, his conduct indicated he would likely commit another crime unless confined, or total confinement was essential to vindicate the authority of the court. So long as one of the three prerequisites for revocation was met, however, the trial court had discretion to choose the length of total confinement, with its only limitation being the maximum sentence that it could have imposed originally at the time of the probationary sentence.

*Id.* (internal quotations and citations omitted).

"Act 44 substantially limited the court's resentencing authority under [Section 9771](c)." *Id.* The newly enacted provision provides that "[t]here is a presumption against total confinement for technical violations of

- 12 -

probation." 42 Pa.C.S.A. § 9771(c). The new provisions provide that the trial court "may impose a sentence of total confinement upon revocation only if:"

> (i) the defendant has been convicted of another crime;
>
> (ii) the court finds by clear and convincing evidence that the defendant committed a technical violation that involves an identifiable threat to public safety and the defendant cannot be safely diverted from total confinement through less restrictive means; or
>
> (iii) the court finds by a preponderance of the evidence that the defendant committed a technical violation and any of the following apply:
>
>> (A) The technical violation was sexual in nature.
>>
>> (B) The technical violation involved assaultive behavior or included a credible threat to cause bodily injury to another, including acts committed against a family or household member.
>>
>> (C) The technical violation involved possession or control of a firearm or dangerous weapon.
>>
>> (D) The technical violation involved the manufacture, sale, delivery or possession with the intent to manufacture, sell or deliver, a controlled substance or other drug regulated under ... [t]he Controlled Substance, Drug, Device and Cosmetic Act.
>>
>> (E) The defendant absconded and cannot be safely diverted from total confinement through less restrictive means.
>>
>> (F) The technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions and the defendant cannot be safely diverted from total confinement through less restrictive means. For purposes of this clause, multiple technical violations stemming from the same episode of events shall not constitute separate technical violations.
>
> (2) If a court imposes a sentence of total confinement following a revocation, the basis of which is for one or more technical

- 13 -

violations under paragraph (1)(ii) or (iii), the court shall consider the employment status of the defendant. The defendant shall be sentenced as follows:

(i) For a first technical violation, a maximum period of 14 days.

42 Pa.C.S.A. § 9771(c). "[T]hrough the enactment of Act 44, [S]ection 9771(c) prohibits the court from imposing a sentence of total confinement for a technical violation of probation, subject to delineated exceptions, and imposes specific, relatively short maximum sentences for a period of confinement imposed for a first or second technical violation." *See Seals*, 2026 PA Super 29, at *6.

Ultimately, in *Seals*,

[w]e reject[ed] the trial court's contention that Act 44 applie[d] only to defendants who were sentenced or resentenced to probation on or after June 11, 2024, and the corollary that Act 44 d[id] not apply [] because Seals was resentenced to a term of total confinement. By its express terms, Act 44 does not limit its application to individuals resentenced to probation. *See* Act of Dec. 14, 2023, P.L. 381, No. 44, § 5(1)-(2). Nor would such an interpretation make logical sense, as Act 44 plainly restricts a trial court's authority to impose a term of total confinement upon resentencing. *See* 42 Pa.C.S.A. § 9771(c). Moreover, the modifications made by Act 44 to the Sentencing Code extend beyond probation resentencing.

Uncodified provisions of Act 44 state that it "shall apply" to two groups: (1) "individuals sentenced or resentenced on or after the effective date of this [S]ection"; and (2) except for [S]ection 9774.1,31 "individuals sentenced or resentenced **prior** to the effective date of this [S]ection." *See* Act of Dec. 14, 2023, P.L. 381, No. 44, § 5. **Stated another way, by its express terms, Act 44's amendments** (other than [S]ection 9774.1) **"are to be construed retroactively**," as "clearly indicated under the provisions of the statute." *Commonwealth v. Shaffer*, 557 Pa. 453, 734 A.2d 840, 843 (1999) (citation omitted).

- 14 -

> At the General Assembly's directive, Act 44's amendments codified at 42 Pa.C.S.A. § 9771(c) apply to Seals because he was resentenced after the effective date of Act 44. But even if he had been sentenced prior to the effective date of Act 44, the General Assembly makes clear that it would still have applied to him. Thus, the trial court erred by applying the prior version of [S]ection 9771(c) when imposing Seals' resentence.
>
> Because the trial court found that the amended version of [S]ection 9771(c) did not apply to Seals' resentencing, it did not make any findings as to whether Seals' technical violations satisfied the prerequisites to imposing a sentence of total confinement. **See** 42 Pa.C.S. § 9771(c)(1). Further, Seals' sentence of total confinement [was] far greater than the maximum authorized sentence for a first (or second) technical probation violation. **See id.** § 9771(c)(2)(i). As the trial court exceeded the authority bestowed upon it under the applicable version of [S]ection 9771(c) to impose a sentence of total confinement following the revocation of Seals' probation, his sentence [was] illegal. Accordingly, we vacate[d] Seals' judgment of sentence and remand[ed] to the trial court for resentencing pursuant to the amended version of [S]ection 9771.

**Seals**, 2026 PA Super 29, at *19 (emphasis added).

Here, in light of our *en banc* decision in **Seals**, we conclude that the amended version of Section 9771(c) applied when Appellant was resentenced upon the revocation of his probation. Although Appellant's technical violations of probation allegedly occurred on March 11, 2024, and the trial court revoked Appellant's probation and resentenced him on April 9, 2024, before the June 11, 2024 effective date for amendments to Section 9771, **Seals** makes clear that the amended statute applies retroactively with limited exceptions that are not applicable here. As such, the trial court erred as a matter of law in applying the prior version of the statute. Upon further review of the revocation proceeding, the trial court did not make findings as to whether Appellant's

technical violations satisfied the prerequisites for imposing a sentence of total confinement under 42 Pa.C.S.A. § 9771(c). More specifically, the court did not consider whether, for purposes of Section 9771(c)(ii), clear and convincing evidence showed that Appellant's technical violations involved an identifiable threat to public safety and that he could not be safely diverted from total confinement through less restrictive means. **See** 42 Pa.C.S.A. § 9771(c)(ii). In addition, the court did not consider whether, for purposes of Section 9771(c)(iii), a preponderance of the evidence showed that Appellant's technical violation was sexual in nature or involved assaultive behavior,[4] possession or control of a firearm, sale of narcotics, abscondence, and/or three occasions of intentional failure to adhere to recommended programming. **See** 42 Pa.C.S.A. § 9771(c)(iii). Accordingly, the trial court lacked authority to impose its sentence of total incarceration. Moreover, the trial court's sentence of three to 10 years of imprisonment clearly exceeds "a maximum period of 14 days" as set forth in 42 Pa.C.S.A. § 9771(c)(2)(i). For all of the foregoing reasons, Appellant's sentence is illegal. Accordingly, we affirm the revocation of Appellant's probation, but remand for resentencing consistent with this decision.

---

[4] While the Commonwealth presented evidence that the alleged probation violation was the result of Appellant "kicking [mental health professional] staff," the trial court did not make relevant findings under the new version of 42 Pa.C.S.A. § 9771(c). **See** N.T., 4/9/2024, at 8. Likewise, it did not consider the employment status of Appellant prior to resentencing, as required under 42 Pa.C.S.A. § 9771(c)(2).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 5/08/2026