J-E03005-25                    2026 PA Super 29

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                          : PENNSYLVANIA
                                                          :
                                                          :
                    v.                                    :
                                                          :
                                                          :
                                                          :
JOHNNY LEWIS SEALS                      :
                                                          :
                    Appellant                       :    No. 1350 MDA 2024

Appeal from the Judgment of Sentence Entered July 17, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001425-2022

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                          : PENNSYLVANIA
                                                          :
                                                          :
                    v.                                    :
                                                          :
                                                          :
                                                          :
JOHNNY LEWIS SEALS                      :
                                                          :
                    Appellant                       :    No. 1351 MDA 2024

Appeal from the Judgment of Sentence Entered July 17, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0000869-2023

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                          : PENNSYLVANIA
                                                          :
                                                          :
                    v.                                    :
                                                          :
                                                          :
                                                          :
JOHNNY LEWIS SEALS                      :
                                                          :
                    Appellant                       :    No. 1352 MDA 2024

Appeal from the Judgment of Sentence Entered July 17, 2024
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001060-2023


BEFORE:  BOWES, J., OLSON, J., STABILE, J., DUBOW, J., KUNSELMAN, J.,
         NICHOLS, J., MURRAY, J., McLAUGHLIN, J., and BECK, J.

J-E03005-25

OPINION BY BECK, J.:                  **FILED: FEBRUARY 17, 2025**

In these consolidated cases, Johnny Lewis Seals ("Seals") appeals nunc pro tunc from the judgment of sentence of one to five years of incarceration imposed by the Lebanon County Court of Common Pleas ("trial court") following the revocation of his probation for technical violations.[1]  Seals was originally convicted and sentenced for driving under the influence ("DUI") of a controlled substance and driving under a suspended license ("DUS").  At the time of the revocation, Seals was serving a term of restrictive probation connected to the specialized jurisdiction of the Lebanon County DUI Court ("DUI Court"), a problem-solving/treatment court in accordance with 42 Pa.C.S. § 916,[2] and its treatment program.  In this appeal, we must first decide whether Seals preserved his sentencing claim for review before this Court.  If so, we then consider whether his revocation and resentencing is

---

[1]  A "technical violation" is "[a] violation of the specific terms and conditions of a defendant's probation, other than by the commission of a new crime of which the defendant is convicted or found guilty by a judge or jury or to which the defendant pleads guilty or nolo contendere in a court of record."  42 Pa.C.S. § 9774.1(k).

[2]  At the time of Seals' resentencing in July 2024, DUI Court and other similar courts throughout the Commonwealth were known as "problem-solving courts."  42 Pa.C.S. § 916(a) (effective until Oct. 20, 2025).  Effective October 20, 2025, these programs are now designated as "treatment courts" to better reflect their mission.  *See* Act of July 21, 2025, P.L. 127, No. 38, § 1 (amending section 916 and related provisions to rename problem-solving courts to treatment courts).  This change in terminology does not impact our decision or its continued precedential value.  All citations to section 916 herein are to the version effective at the time of Seals' resentencing unless otherwise stated.

- 2 -

governed by the version of 42 Pa.C.S. § 9771(c) amended by Act 44 of 2023[3] ("Act 44"), and whether the trial court was authorized to impose the sentence it did for a first technical violation of probation.[4]

After careful review, we hold that a claim that a court failed to follow the limitations imposed by section 9771(c) is a challenge to the legality of a sentence and thus not subject to issue preservation requirements. We further hold that section 9771(c), as amended by Act 44, applied to Seals and, more generally, to probation with restrictive conditions imposed through a county intermediate punishment ("CIP") program, including probation connected to a treatment court with specialized jurisdiction pursuant to 42 Pa.C.S. § 916. As the trial court failed to comply with the requirements of the amended version of section 9771 when resentencing Seals, it imposed an illegal sentence; we therefore vacate Seals' judgment of sentence and remand to the trial court for resentencing.

**Facts and Procedural History**

On September 11, 2022, while his license was suspended, Seals drove a vehicle under the influence of THC, a Schedule I controlled substance. The

---

[3] *See* Act of Dec. 14, 2023, P.L. 381, No. 44 (effective June 11, 2024).

[4] The version of section 9771 at the time of Seals' resentencing was effective June 11, 2024 to October 19, 2025. We refer to this version unless otherwise specified. A new version of section 9771 with a minor change took effect on October 20, 2025. *See* Act of July 21, 2025, P.L. 127, No. 38, § 1 (changing subsection (C)(2)(iv)(B)'s reference to "problem-solving court" to "treatment court" consistent with amendments to section 916); *see also supra*, note 2.

Commonwealth charged Seals with DUI, DUS, and summary traffic offenses at docket number CP-38-CR-1425-2022 ("1425-2022"). While these charges were pending, Seals drove twice more with a suspended license, resulting in separate DUS charges at docket numbers CP-38-CR-869-2023 ("869-2023") and CP-38-CR-1060-2023 ("1060-2023").

On February 21, 2024, Seals accepted a negotiated plea agreement resolving all three dockets. In addition to summary traffic offenses, he pled guilty to DUI of a controlled Schedule I substance as a second offense at 1425-2022 and one count of DUS as a third or subsequent offense at each of the three dockets.[5]

The trial court sentenced Seals to probation with restrictive conditions under the supervision of Lebanon County Probation Services ("Probation Services"), with a term of five years for DUI and concurrent terms of one year for each DUS conviction, and the payment of fines, costs, and restitution. Seals' probation was subject to the following restrictive conditions:

- During year one, Seals shall serve "on restrictive probation with the Lebanon County DUI Court Program" and comply with all program requirements. Trial Court Order (1425-2022), 2/21/2024, at i. Seals was restricted to "house arrest with electronic monitoring in accordance with [Probation Services'] standard house arrest conditions." *Id.*[6]

---

[5] 75 Pa.C.S. §§ 3802(d)(1)(i), 1543(b)(1)(iii).

[6] For each DUS conviction, Seals' term of probation with the restrictive condition of house arrest with electronic monitoring was only six months, which ran concurrent to his DUI sentence. Trial Court Orders (1425-2022, 869-2023, & 1060-2023), 2/21/2024, at i-ii.

Further, "[t]his period of restrictive probation shall include [ninety] days on the SCRAM device."[7] ***Id.***

- During years two through four, Seals' restrictive conditions included (1) completing "all requirements presented by the DUI Court Treatment Team and as required by DUI Court Contracts"; (2) complying with "all requirements of Act 24 of 2003";[8] (3) complying with "all treatment recommendations"; and (4) completing "the requirements of the period of probation under intensive supervision," which included compliance with "all rules, regulations, conditions and restrictions imposed by … Probation Services." ***Id.*** at i, ii.

- During the entire term, Seals was ordered to abide by: (1) specified rules of supervision attached and incorporated into the order, including (a) "General Conditions of Probation and Parole," (b) "House Arrest/Electronic Monitoring Rules and Guidelines," and (c) the "SCRAM Program Participant Agreement"; and (2) special conditions, including (a) undergoing a drug and alcohol evaluation, complying with all recommendations, and satisfactorily completing the programming; (b) attending twelve step meetings as directed by the adult probation department; (c) obtaining and maintaining fulltime employment; and (d) complying with Act 24 of 2003. ***See*** Trial Court Orders (1425-2022, 869-2023, & 1060-2023), 2/21/2024, at i-ii.

Shortly after Seals' first ninety days expired, the Lebanon County

Probation Department lodged a detainer alleging violations of his probation

---

[7] According to the SCRAM CAM+HA Program Participation Agreement incorporated into the February 21, 2024 sentencing order, SCRAM is an abbreviation of Secure Continuous Remote Alcohol Monitoring, and it is a device worn as a bracelet that conducts periodic testing for the presence of a positive blood alcohol concentration by measuring alcohol emitted as vapors through the skin.

[8] Act 24 of 2003 amended numerous provisions of the Crimes Code (Title 18), the Judicial Code (Title 42) and the Vehicle Code (Title 75) pertaining to DUI more than twenty years ago. ***See*** Act of Sept. 30, 2003, P.L. 120, No. 24. Considering that Act 24's provisions have long been codified into statutory law, and the General Assembly has amended those same statutes many times in ensuing years, it is unclear with which aspects of Act 24 the trial court ordered Seals to comply. As this does not impact our decision herein, we do not explore this further.

with restrictive conditions at all three dockets. Adult Probation Detainer, 6/4/2024, at 1. In its petitions, the department alleged that Seals committed six separate violations: (1) positive drug tests for methamphetamine and THC; (2) admitting use of ecstasy; (3) failing to report for two scheduled drug tests; (4) failing to provide a urine sample; (5) having marijuana at his residence; and (6) failing to comply with the rules of house arrest. **See** Petitions to Determine Probation with Restrictive Conditions Violation (869-2023 & 1060-2023), 6/13/2024, at 1 (unnumbered); Petition to Determine Probation with Restrictive Conditions Violation (1425-2022), 6/17/2024, at 1 (unnumbered).

On July 17, 2024, the trial court conducted a combined **Gagnon I/Gagnon II** hearing.[9] The prosecutor informed the court that Seals was "being violated out of DUI Court." N.T., 7/17/2024, at 2. Seals admitted to the violations on the record. **Id.** at 4-6. Seals' public defender, whom the trial court appointed mid-hearing, requested that Seals receive a sentence at

---

[9] Because a probation revocation results in a loss of liberty, a probationer must be accorded due process of law. **See Gagnon v. Scarpelli**, 411 U.S. 778, 782 (1973); **Commonwealth v. Davis**, 336 A.2d 616, 620 (Pa. Super. 1975). Revocation occurs in a two-step process. First, when a probationer is detained based on an alleged probation violation, due process requires a **Gagnon I** pre-revocation hearing to determine whether probable cause exists to believe that the probationer committed a violation. **Commonwealth v. Ferguson**, 761 A.2d 613, 617 (Pa. Super. 2000). If the Commonwealth satisfies this burden, a second, more comprehensive **Gagnon II** revocation hearing follows at which trial court determines whether to revoke probation. **Id.**

the bottom of the standard range. *Id.* at 3, 6. Neither the trial court nor counsel for either side mentioned Act 44, which had taken effect five weeks prior.[10]

The trial court found that Seals violated conditions 3, 9, 11, and 12 and revoked his probation. *Id.* at 8. The trial court stated it knew Seals because "[h]e's been around the block a few times," that it had given him "a chance in DUI Court" and it "just didn't work out," and that it would nonetheless give Seals "a break" by sentencing him at the lower end of the standard range. *Id.* It resentenced him to an aggregate period of one to five years of incarceration in a state correctional institution—one to five years for DUI, and concurrent six-month to one-year sentences for each count of DUS. *Id.* at 8-11. The trial court ordered Seals to undergo a drug and alcohol evaluation, comply with treatment recommendations, and gave him forty-three days of credit for the time spent detained prehearing. *Id.*

The court did not advise Seals of his post-sentence rights and Seals did not file a post-sentence motion. Following the reinstatement of his appellate rights, he filed timely notices of appeal nunc pro tunc at each docket, which we consolidated sua sponte. Both Seals and the trial court have complied with Rule 1925 of our Rules of Appellate Procedure.

---

[10] Seals raises no claims on appeal concerning any procedural defects in the probation revocation process.

## Issues on Appeal

Seals initially raised a single issue for review, asking this Court to decide whether the trial court erred by resentencing him to one to five years of incarceration as it exceeds the maximum sentence for a first technical violation of probation authorized by section 9771(c), amended by Act 44 the month prior to his resentencing.  **See** Seals' Brief at 2.  Following the receipt of briefs from both parties, however, this Court sua sponte certified the matter to be heard by the Court en banc on August 20, 2025, adding a second issue for the parties to brief concerning the propriety of our recent panel decision in **Commonwealth v. Slaughter**, 339 A.3d 456 (Pa. Super. 2025),[11] in light of Act 44's amendments to 42 Pa.C.S. § 9771.  **See** Order, 8/20/2025, at 2; **see also** Seals' Brief at 2.

### Overview of Probation as Sentencing Alternative as Amended by Act 44

Both issues pending before this Court require an examination of the Sentencing Code.  We therefore begin with an overview of the relevant provisions.

---

[11] After the parties submitted their initial briefs in this case, the **Slaughter** panel held that the question of whether a trial court fails to comply with the amended version of 42 Pa.C.S. § 9771(c) is an issue implicating the discretionary aspects of sentencing, not its legality.  **Slaughter**, 339 A.3d at 464.  As discussed in greater detail below, the appellant must preserve the former challenge before the trial court and on appeal, but the latter is not waivable.

Sentencing Alternatives Generally

A trial court has discretion to sentence a defendant within the confines of the authority provided to it by the General Assembly. **See** 42 Pa.C.S. § 9703. Section 9721(a) generally affords the trial court the discretion to "consider and select one or more" of five sentencing alternatives and impose them consecutively or concurrently: (1) probation; (2) guilt without further penalty; (3) partial confinement; (4) total confinement; and (5) a fine. 42 Pa.C.S. § 9721(a); **but see id.** § 9721(a.1) (setting forth exceptions to general rule in section 9721(a), discussed infra).

Imposition of an Order of Probation

Probation is a sentencing alternative that a court may impose in addition to, or instead of, confinement and other penalties. **See id.** §§ 9721(a)(1), (b), 9722. When sentencing a defendant to probation, the sentencing court is authorized to set the term of probation, select the authority responsible for supervising the probation,[12] and impose reasonable conditions of probation in accordance with section 9763, which must be specified at the time of sentencing. **Id.** §§ 9754(a)-(b), 9763(a). It also must consider the guidelines applicable to sentencing and restrictive conditions as adopted by the Pennsylvania Commission on Sentencing pursuant to sections 2154 and

---

[12] Probation is supervised by county probation departments, **see** 42 Pa.C.S. §§ 9911-9914, or the State Department of Corrections, **see** 61 Pa.C.S. §§ 6171(11)(ii), 6172(a).

2154.1. *Id.* § 9754(a). The length of the probationary term "may not exceed the maximum term for which the defendant could be confined." *Id.*

Conditions must be individualized, necessary, and the least restrictive means available to promote the defendant's rehabilitation and protection of the public. *Id.* § 9763(b). There are thirteen specifically enumerated general conditions that a court may include, and one that authorizes the court to order the probationer to "do other things reasonably related to rehabilitation." *Id.* § 9763(b)(1)-(7), (9)-(15). A sentencing court also has authority to order certain specialized restrictive conditions of probation in accordance with subsections (c) and (d), which, respectively, pertain to restrictive DUI

probation conditions and restrictive conditions of probation in general. ***Id.*** § 9763(c),[13] (d).[14]

---

[13] Section 9763(c) provides:

**(c) Restrictive DUI probation conditions.--**

(1) Any person receiving a penalty imposed pursuant to 75 Pa.C.S. § 1543(b) (relating to driving while operating privilege is suspended or revoked), former 75 Pa.C.S. § 3731 (relating to driving under influence of alcohol or controlled substance) or 75 Pa.C.S. § 3804 (relating to penalties) for a first, second or third offense under 75 Pa.C.S. Ch. 38 (relating to driving after imbibing alcohol or utilizing drugs) may only have probation imposed after undergoing an assessment under 75 Pa.C.S. § 3814 (relating to drug and alcohol assessments).

(2) If the defendant is determined to be in need of drug and alcohol treatment, the defendant may only have probation that includes participation in drug and alcohol treatment under 75 Pa.C.S. § 3815(c) (relating to mandatory sentencing). The defendant shall have restrictive DUI probation conditions of:

(i) a residential inpatient program or a residential rehabilitative center;

(ii) house arrest with electronic surveillance;

(iii) a partial confinement program such as work release, work camp and halfway facility; or

(iv) any combination of the programs set forth in this paragraph.

(3) If the defendant is determined not to be in need of drug and alcohol treatment, the defendant shall have restrictive DUI probation conditions of:

(i) house arrest with electronic surveillance;

*(Footnote Continued Next Page)*

Modification and Revocation of Probation

"The court has inherent power to at any time terminate continued supervision, lessen the conditions upon which an order of probation has been imposed or increase the conditions under which an order of probation has been imposed upon a finding … that a person presents an identifiable threat to public safety." *Id.* § 9771(a). Upon proof at a hearing of the violation of specified conditions of probation, the court is authorized to increase the conditions, sanction the probationer pursuant to a court-established program, or revoke an order of probation. *Id.* § 9771(b), (d).

"Revocation and resentencing are warranted if, in the face of a new criminal act or the violation of a condition of probation, the court finds that

_____

> (ii) partial confinement programs such as work release, work camps and halfway facilities; or
>
> (iii) any combination of the programs set forth in this paragraph.
>
> (4) If the defendant is determined to be in need of additional treatment under 75 Pa.C.S. § 3814(2), the judge shall impose a minimum sentence as provided by law and a maximum sentence equal to the statutorily available maximum.

42 Pa.C.S. § 9763(c).

[14] Section (d), entitled restrictive conditions of probation, provides that "[p]robation may include restrictive conditions that: (1) house the person full time or part time, including inpatient treatment; or (2) significantly restrict the person's movement and monitor the person's compliance with the program, including electronic monitoring or home confinement." *Id.* § 9763(d).

probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity." ***Commonwealth v. Foster***, 214 A.3d 1240, 1251 (Pa. 2019). Probation revocation is "an integral element of the original conditional sentence." ***Commonwealth v. Mullins***, 918 A.2d 82, 85 (Pa. 2007). If evidence establishes that the probationer has violated the conditions of probation, the trial court must make a finding on the record that a violation occurred and then proceed to resentence the petitioner.[15] ***See*** 42 Pa.C.S. §§ 9754(d), 9771(d). The court may only revoke a defendant's probation for a technical violation, however, if the preponderance of the evidence establishes that the defendant violated a specific condition of probation or committed a new crime. ***Foster***, 214 A.3d at 1243; ***see also*** 42 Pa.C.S. § 9771(b).

<u>Act 44</u>

Act 44, which amended multiple Sentencing Code provisions pertaining to probation, took effect on June 11, 2024. ***See*** Act of Dec. 14, 2023, P.L. 381, No. 44, § 9. Among other changes, Act 44 modifies the trial court's

---

[15] "Sentencing is a general term that subsumes resentencing." ***Commonwealth v. Mazzetti***, 44 A.3d 58, 66 (Pa. 2012). Where there are nuances that differentiate the terms, the General Assembly's word choice in the Sentencing Code makes that clear. ***See id.*** (interpreting a distinction between sentencing and resentencing pertaining to mandatory minimum sentences under a version of the Sentencing Code no longer in effect).

resentencing authority following a revocation of probation.[16]  Prior to Act 44,

section 9771(b) allowed the trial court, upon revocation, to "choose from any

of the sentencing options that existed at the time of the original sentencing,

including incarceration."  ***Commonwealth v. Colon***, 102 A.3d 1033, 1044

(Pa. Super. 2014) (citations omitted).  Section 9771(b) was implicitly limited

by 9771(c), which prohibited a trial court from imposing a resentence of total

confinement unless the trial court found that the defendant was convicted of

another crime, his conduct indicated he would likely commit another crime

unless confined, or total confinement was "essential to vindicate the authority

of the court."  42 Pa.C.S. § 9771(c) (effective Dec. 18, 2019 to June 10, 2024).

So long as one of the three prerequisites for revocation was met, however,

the trial court had discretion to choose the length of total confinement, with

its only limitation being "the maximum sentence that it could have imposed

---

[16]  Act 44 makes two other significant changes to Pennsylvania's probationary scheme beyond the one at issue in this case.  First, the scope of the sentencing court's ability to impose "reasonable conditions" of probation has changed. Previously, the court could impose reasonable conditions "it deem[ed] necessary," in its discretion, "to ensure or assist the defendant in leading a law-abiding life."  ***See*** 42 Pa.C.S. §§ 9754(b), 9763(c) (effective prior to Dec. 10, 2024).   Now, the court solely may impose conditions that are individualized, necessary, and the least restrictive to promote the defendant's rehabilitation and to protect the public.  ***See*** 42 Pa.C.S. §§ 9754(b), 9763(c). Second, Act 44 implemented a new statutory provision creating a requirement for "probation review conference[s]."  ***See*** 42 Pa.C.S. § 9774.1.  It includes a detailed description of how, when, and under what circumstances such conferences must be conducted, and provides the potential—and in some instances, the mandate—for early termination of probation at such conferences.  ***See id***. § 9774.1(a)-(i).

originally at the time of the probationary sentence." **_Colon_**, 102 A.3d 1044 (citations omitted).

Act 44 amended subsection (b), making subsection (c)'s limitation upon the court's sentencing authority express by adding the following bolded language:

> **Subject to the limitations of subsections (b.1)**[17] **and (c)**, upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation. The attorney for the Commonwealth may file notice at any time prior to resentencing of the Commonwealth's intention to proceed under an applicable provision of law requiring a mandatory minimum sentence.

42 Pa.C.S. § 9771(b) (emphasis and footnote added). Further, Act 44 substantially limited the court's resentencing authority under subsection (c), which differs significantly from the prior version:

> **(c) Limitation on sentence of total confinement**.--There is a presumption against total confinement for technical violations of probation. The following shall apply:
>
> > (1) The court may impose a sentence of total confinement upon revocation only if:
> >
> > > (i) the defendant has been convicted of another crime;
> > >
> > > (ii) the court finds by clear and convincing evidence that the defendant committed a technical violation that involves an identifiable threat to public safety and the defendant cannot be safely diverted from total confinement through less restrictive means; or

---

[17] Subsection (b.1), regarding failure to pay fines, is not applicable to this case.

- 15 -

(iii) the court finds by a preponderance of the evidence that the defendant committed a technical violation and any of the following apply:

(A) The technical violation was sexual in nature.

(B) The technical violation involved assaultive behavior or included a credible threat to cause bodily injury to another, including acts committed against a family or household member.

(C) The technical violation involved possession or control of a firearm or dangerous weapon.

(D) The technical violation involved the manufacture, sale, delivery or possession with the intent to manufacture, sell or deliver, a controlled substance or other drug regulated under … [t]he Controlled Substance, Drug, Device and Cosmetic Act.

(E) The defendant absconded and cannot be safely diverted from total confinement through less restrictive means.

(F) The technical violation involved an intentional and unexcused failure to adhere to recommended programming or conditions on three or more separate occasions and the defendant cannot be safely diverted from total confinement through less restrictive means. For purposes of this clause, multiple technical violations stemming from the same episode of events shall not constitute separate technical violations.

(2) If a court imposes a sentence of total confinement following a revocation, the basis of which is for one or more technical violations under paragraph (1)(ii) or (iii), the court shall consider the employment status of the defendant. The defendant shall be sentenced as follows:

(i) For a first technical violation, a maximum period of 14 days.

(ii) For a second technical violation, a maximum period of 30 days.

(iii) For a third or subsequent technical violation, the court may impose any sentencing alternatives available at the time of initial sentencing.

(iv) The time limitations contained in this paragraph shall not apply to the extent that a reasonable term of additional total confinement, not to exceed 30 days, is necessary to allow a defendant to either be evaluated for or to participate in:

(A) a court-ordered drug, alcohol or mental health treatment program; or

(B) a problem-solving court provided for in section 916 (relating to problem-solving courts).

(3) Nothing in this section shall prevent the adoption of a program [to establish swift, predictable and brief probation violation sanctions] under section 9771.1.

***Id.*** § 9771(c). Thus, through the enactment of Act 44, section 9771(c) prohibits the court from imposing a sentence of total confinement for a technical violation of probation, subject to delineated exceptions, and imposes specific, relatively short maximum sentences for a period of confinement imposed for a first or second technical violation. ***See id.***

**Classification of Challenges to the Trial Court's Sentencing Authority under Section 9771(c)**

Overview of Classifying Sentencing Challenges

Correct classification of a sentencing challenge is important, in pertinent part, to the question of issue preservation. Generally, an appellate court cannot review an issue that the appellant did not raise and preserve before the trial court. ***See Commonwealth v. Barnes***, 151 A.3d 121, 498 (Pa. 2016); ***see also*** Pa.R.A.P. 302 ("Issues not raised in the trial court are waived

and cannot be raised for the first time on appeal."). One exception to this general requirement, however, is a "challenge … implicating the legality of the appellant's sentence." ***Barnes***, 151 A.3d at 124. A challenge to the legality of a sentence can be appealed as of right and cannot be waived, whereas a challenge of the discretionary aspects of a sentence has procedural prerequisites, including issue preservation, identification of the issue in an appellate brief in accordance with Pa.R.A.P. 2119(f), and raising a substantial question that the sentence is not appropriate under the Sentencing Code to invoke this Court's discretion to address the issue on appeal. ***See*** 42 Pa.C.S. § 9781(a), (b); Pa.R.A.P. 2119(f); ***see also Commonwealth v. Davis***, 341 A.3d 808, 813 (Pa. Super. 2025). Recognizing that the line between the two types of claims is not always clear, our Supreme Court has directed us to consider whether an appellant is challenging the trial court's authority to impose the sentence at issue—a legality challenge—or to trial court's exercise of that authority—a discretionary aspects challenge. ***See Commonwealth v. Prinkey***, 277 A.3d 554, 560, 563-64 (Pa. 2022).

*Superior Court Decisions: **Slaughter** and **Schutzues***

In ***Slaughter***, a panel of this Court classified a resentencing challenge alleging a "lack of adherence" to newly amended section 9771(c) as one implicating the discretionary aspects of sentencing. ***Slaughter***, 339 A.3d at 464. After Act 44 took effect, the trial court resentenced Slaughter to two-and-a-half to five years of incarceration following its revocation of his

probation for several technical violations committed before Act 44's effective date. *Id.* at 461-62. Although Slaughter filed a post-sentence motion raising a separate challenge to the discretionary aspects of his sentence, he made no mention of Act 44's applicability at sentencing or in his post-sentence motion, raising the issue instead for the first time in his concise statement of matters complained of on appeal. *Id.* at 464.

Before vacating Slaughter's sentence based upon his separate, preserved challenge, this Court declined to consider Slaughter's contention that the trial court "erred by imposing a sentence that was in contravention of [s]ection 9771(c)" and that it should have resentenced him in accordance with the "escalating penalties of 42 Pa.C.S. § 9771(c)(2)," i.e., section 9771(c), as amended by Act 44. *Slaughter*, 339 A.3d at 464. The panel determined that Slaughter's issue implicated the discretionary aspects of his sentence, relying on *Commonwealth v. Schutzues*, a 2012 decision of this Court, and concluded that Slaughter's failure to preserve the claim before the trial court waived the issue for appeal. *Id.* (citing *Commonwealth v. Schutzues*, 54 A.3d 86, 91, 98 (Pa. Super. 2012)).

In *Schutzues*, while serving the probationary tail of his sentence following incarceration for various sex offenses, Schutzues violated the conditions of his probation by having contact with a minor. *Schutzues*, 54 A.3d at 89. Upon revoking his probation and imposing a sentence of six-and-a-half to thirteen years of incarceration, the trial court remarked only that its

intent was to maximize his sentence without referencing section 9771(c). *Id.* at 91. Among other challenges to his sentence raised in his third appeal to this Court,[18] Schutzues claimed that the trial court illegally sentenced him to a term of imprisonment without first finding that the Commonwealth proved any of the three statutory preconditions set forth in the prior version of section 9771(c). *Id.* Schutzues failed to preserve his argument that the court failed to adhere to 9771(c) in his concise statement thereby waiving it unless it implicated the legality of his sentence. *Id.* at 91.

With one judge concurring in the result, a three-judge panel of this Court affirmed Schutzues' judgment of sentence. *Id.* at 100. The majority decided that a trial court's failure to adhere to section 9771(c) when imposing a sentence of incarceration following probation revocation was a challenge to the discretionary aspects of the sentence. *Id.* at 93.

Examining the nuances of the issue at length, the **Schutzues** Court noted that a trial court's decision to impose a sentence of total confinement in disregard of section 9771(c) potentially involved both the trial court's statutory authority to incarcerate and the trial court's discretion in evaluating the facts and circumstances of the probationer's case. *Id.* at 95-96. Describing subsections (c)(1)-(3) as factual "prerequisites," the court took

---

[18] The trial court's first two attempts at resentencing Schutzues to the maximum penalty were vacated by this Court on appeal as "flagrantly illegal sentences." **Schutzues**, 54 A.3d at 91.

note of the plain language of section 9771(c), which stated the "trial court 'shall not' impose total confinement 'unless it finds' one of three prerequisites." *Id.* at 92-93.

The panel recognized that the trial court's compliance with section 9771(c) "is explicitly non-discretionary." *Id.* at 94. In this regard, the Court construed section 9771(c) as a mandatory limitation upon the trial court's authority to exercise its traditional sentencing discretion akin to a mandatory minimum statute at issue in our Supreme Court's decision in ***Commonwealth v. Foster***. *Id.* at 91-94 (citing ***Commonwealth v. Foster***, 17 A.3d 332, 342, 345 (Pa. 2011) (plurality)).

In ***Foster***, a plurality of our Supreme Court determined that a sentence issued in contravention to a legislative limit placed upon the trial court's traditional sentencing authority or the trial court's decision to exercise its discretion in a manner that was "patently inconsistent with [a] 'sentencing parameter set forth by the General Assembly'" was an illegal sentence. *Id.* at 92 (quoting ***Foster***, 17 A.3d at 342). Had ***Foster*** created binding precedent, the ***Schutzues*** Court recognized that it "might end the matter," because the use of "shall not" and "unless" in section 9771(c) operated as limitations upon "the trial court's ability to impose a sentence of total confinement for probation violations." *Id.* at 93. "[A] trial court's imposition of [a sentence of] total confinement without making the requisite finding

obviously would be 'patently inconsistent' with the General Assembly's sentencing parameter." *Id.* (cleaned up).

Because *Foster* did not garner a majority, however, *Schutzues* continued its analysis, observing that, despite its mandatory nature, imposing a resentence under subsection (c) involves "consideration of many factors" that implicate the court's discretion. *Id.* at 94-95. The Court emphasized the benefits of issue preservation, particularly where there is a question of whether a trial court ignored the statute and "failed to make the prescribed findings" or whether it abided by the statute and simply exercised its discretion when applying subsection (c). *Id.* at 97-98. Ultimately, the *Schutzues* Court concluded that

> challenges under [section] 9771(c) are not among the narrow class of issues that implicate the legality of a sentence. Simply put, if a defendant believes the record is devoid of evidence supporting total confinement under [section] 9771(c), he must preserve that argument as a challenge to the discretionary aspects of the sentence. Absent further instruction from our Supreme Court or an en banc panel of this Court, we decline to conclude that a trial court's apparent failure to consider [section] 9771(c) results in an illegal sentence.

*Id.* at 98.

Parties' Arguments

Like the probationer in *Slaughter*, Seals did not raise the applicability of Act 44 before the trial court, raising it instead for the first time in his concise statement of matters complained of on appeal. *See* Seals' Brief at 21. Thus,

if **Slaughter** is correct, it is dispositive of this case because Seals waived this issue by failing to preserve it below.

Seals argues that his failure to preserve his challenge to his sentence pursuant to section 9771(c) is not fatal to our review because this issue implicates a non-waivable legality claim. **Id.** at 8-9, 21. He urges this Court to overrule **Slaughter**'s contrary holding. **Id.** at 15, 21, 23. Seals provides two arguments in support of his claim that **Slaughter** was wrongly decided. **Id.** First, **Slaughter** relied entirely upon **Schutzues** without recognizing that subsequent Supreme Court decisions in **Commonwealth v. Barnes** and **Commonwealth v. Prinkney** superseded **Schutzues**' doctrinal underpinnings. **Id.** at 15-19. Second, **Schutzues** analyzed a prior version of section 9771(c) that is fundamentally different from the current version. **Id.** at 19-20.

Conversely, the Commonwealth argues that this Court correctly decided **Slaughter** because neither **Foster** nor **Barnes** pertain to challenges under section 9771(c), leaving the holding of **Schutzues** intact. Commonwealth's Brief at 39, 45-46. It argues that **Schutzues** remains good law, as challenges under 9771(c) are not among the narrow class of issues that implicate the legality of a sentence because resentencing judges must exercise their discretion when applying section 9771(c). **Id.** at 48-52. The Commonwealth contends that the differences between the version of section 9771(c) analyzed by **Schutzues** and the one amended by Act 44 do not change the fundamental

purpose of the statute constraining "the trial court's discretion to incarcerate a probation violator" by imposing prerequisites that must be satisfied before imposing a sentence of total confinement. *Id.* at 47-48 (quoting *Schutzues*, 54 A.3d at 93). That the prerequisites differ between the old and new versions of section 9771(c) is of no consequence because they are mandatory in either instance. According to the Commonwealth, the only point critical to our analysis is that once the prerequisites are satisfied, both versions of subsection (c) "require an exercise of discretion by the trial court" in considering multiple factors to impose a sentence, thereby implicating the discretionary aspects of Seals' sentence. *Id.* at 47-48 (quoting *Schutzues*, 54 A.3d at 95).

## Analysis

"The question of whether a challenge to a sentence implicates its discretionary aspects or its legality presents a pure question of law." *Commonwealth v. Prinkey*, 277 A.3d 554, 560 (Pa. 2022). We review questions of law de novo with a plenary scope of review. *Id.*

The Statutory Construction Act[19] guides our analysis of statutory text. *See Commonwealth v. Gamby*, 283 A.3d 298, 306 (Pa. 2022). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). The plain

---

[19] 1 Pa.C.S. §§ 1501-1991.

language of the statute traditionally "provides the best indication of legislative intent." *Commonwealth v. Crosby*, 329 A.3d 1141, 1149 (Pa. 2025) (citation omitted). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

The General Assembly has instructed courts to ascribe the "common and approved meaning" to its chosen words and phrases, unless the word or phrase is technical, has acquired a peculiar and appropriate meaning, or is expressly defined in the statute. 1 Pa.C.S. § 1903(a). We consider the statutory language not in isolation, but within the context in which it appears. *Commonwealth v. Rosario*, 294 A.3d 338, 346 (Pa. 2023); *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 906 (Pa. 2016). "Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a).

If statutory language is ambiguous, sections 1921(c) and 1922 enumerate nonexclusive lists of eight statutory construction factors and five presumptions that we may consider to aid us in discerning the General Assembly's intent. *See id.* §§ 1921(c), 1922. "A statute is ambiguous when there are at least two reasonable interpretations of the text under review." *Commonwealth v. Green*, 291 A.3d 317, 327 (Pa. 2023) (citation omitted).

Although *Schutzues* thoroughly analyzed the classification issue based upon the law applicable at the time, there was much uncertainty in this area,

as even our Supreme Court had not formed a consensus regarding the contours of an illegal sentencing claim. *See Prinkey*, 277 A.3d at 560. In recounting the evolution that occurred in the law, the *Prinkey* Court described its plurality decision in *Foster* as laying the groundwork for the modern legality of sentencing doctrine. *Id.* at 560. Post-*Foster*, the next relevant development occurred four years after this Court decided *Schutzues*, when the Supreme Court revisited what constitutes a legality of sentencing claim in *Commonwealth v. Barnes*. By defining "an illegal sentence as one … imposed without authority," *Barnes* adopted the approach championed by the lead plurality opinion in *Foster* and "settled the broad parameters of an illegal sentencing claim." *Prinkey*, 277 A.3d at 561. Thus, pursuant to *Barnes*, we now recognize, in relevant part, a claim that a sentence was "imposed without the fulfillment of statutory preconditions to the court's sentencing authority" as a challenge to the legality of a sentence. *Id.* at 562. Specifically,

> if the sentencing statute at issue conditions the court's authority to impose a sanction upon the existence of attendant circumstances, and if those circumstances were not present, then the court lacked statutory authority to impose the sentence, even though the unfulfilled conditions may not raise an issue of constitutional dimension.

*Id.*[20]

---

[20] As discussed in *Prinkey*, as the law became more settled in this area, our Supreme Court defined four categories of illegal sentencing claims. These include (but are not necessarily limited to) sentences (1) imposed pursuant to a facially unconstitutional statute; (2) imposed without the fulfillment of

*(Footnote Continued Next Page)*

While **Barnes** and **Prinkey** did not interpret section 9771(c) specifically, it is nonetheless apparent that both decisions repudiated the analysis underpinning **Schutzues**.  As **Prinkey** explained,

> the inquiry is whether, assuming the appellant's claim prevails, the result would be that the trial court lacked authority to impose the sentence at issue.  If so, then the appellant's challenge implicates the legality of his sentence.  Conversely, if the challenge is not to the existence of certain authority but to the exercise of that authority, then the challenge goes to the discretionary aspects of a sentence, not to its legality.

**Prinkey**, 277 A.3d at 563-64 (footnote omitted).

Utilizing this reasoning, a claim that the trial court failed to adhere to section 9771(c) when resentencing a probationer to a period of total confinement implicates the legality of the sentence, not its discretionary aspects.  As explained hereinabove, when resentencing a probationer following a revocation of probation, section 9771(b) generally authorizes the sentencing court to exercise its discretion to choose among the same sentencing alternatives that were available at the time of the initial sentencing.  42 Pa.C.S. § 9771(b); **see also id.** § 9721(a).  The plain language of the statute, however, limits this discretion, in relevant part, for resentences to terms of incarceration.  **Id.**  Section 9771(c) contains an

statutory preconditions to the court's sentencing authority; (3) violative of a substantive restriction that the Constitution places upon a court's power to apply the statutory sentence to the defendant; and (4) where statutory support for the underlying conviction is void ab initio.  **Prinkey**, 277 A.3d at 562-54.

express "presumption" that total confinement is not warranted for technical violations of probation and authorizes the court to impose a term of imprisonment "only if" one of the statutory prerequisites in subsection (1) exist. **Id.** § 9771(c)(1). In addition to another criminal conviction, the General Assembly made an exception to this prohibition solely for technical violations that meet specified criteria relating to the probationer's conduct, which must be proven to a specified evidentiary standard; for several provisions, the trial court must first rule out less restrictive resentencing alternatives. **Id.** § 9771(c)(1)(i)-(iii).

If the Commonwealth satisfies its burden of proving one of the three exceptions to the prohibition against incarceration for technical violations of probation, only then does the trial court have discretion to impose a resentence of total confinement. **See id.** § 9771(c) (providing that the trial court "may impose a sentence of total confinement" if the Commonwealth establishes one of the enumerated exceptions to the presumption against total confinement of technical probation violators). In the absence of the requisite proof of one of the three exceptions, however, the trial court has no such discretion and is prohibited from issuing a sentence of incarceration for a technical probation violation. **Id.** In other words, without the fulfillment of statutory preconditions, section 9771(c) strips the sentencing court of its customary authority to exercise discretion in sentencing.

This is also true for the sentence of incarceration the trial court may impose. Section 9771(c)(2) specifically delineates the maximum allowable sentence of total confinement for a first and second technical violation. ***Id.*** § 9771(c)(2). Any sentence imposed in excess of the statutory maximum is unquestionably illegal. ***See Commonwealth v. Shiffler***, 879 A.2d 185, 189 (Pa. 2005).

Although differently phrased, both Seals and the appellant in ***Slaughter*** challenged the trial court's authority to impose a sentence of total confinement based upon its failure to adhere to the mandatory limits imposed by section 9771(c), as amended by Act 44. This presents a challenge not to the trial court's "exercise of valid sentencing discretion" but to its authority to exercise its discretion in the first instance pursuant to section 9771. ***Prinkey***, 277 A.3d at 568. Pursuant to ***Barnes*** and ***Prinkey***, this constitutes a challenge to the legality of the sentence imposed. As such, to the extent that ***Schutzues*** or ***Slaughter*** classify a claim involving a sentencing court's failure to consider and/or make the findings required by section 9771(c) as a matter implicating the discretionary aspects of a sentence, they are overruled. ***See Slaughter***, 339 A.3d at 464-65; ***Schutzues***, 54 A.3d at 91, 98.[21] Because

---

[21] We emphasize, though, that not every claim implicating section 9771(c) is a challenge to the legality of a sentence. As discussed, a trial court retains some discretion in sentencing a technical probation violator to a period of total confinement if it correctly finds that the Commonwealth satisfied its burden of proof as to one of the three exceptions to the presumption against

*(Footnote Continued Next Page)*

the substantive issue raised by Seals implicates the legality of his sentence, it was not subject to issue preservation requirements, and we may proceed to review the merits of his claim.

## Legality of Seals' Sentence of Total Confinement

### Arguments of the Parties and Trial Court Rationale

We turn now to the merits of Seals' substantive claim. He contends that the trial court erred in imposing a sentence of total confinement that exceeded the fourteen-day maximum sentence authorized by section 9771(c)(2)(i). Seals' Brief at 13. Seals emphasizes that the trial court neither considered nor placed findings on the record as to whether his technical violations satisfied any exception to the presumption against incarcerating him as required by section 9771(c)(1); as such, the "preconditions" for total confinement were not met. *Id.* at 13, 21-22. According to Seals, he should have been sentenced, at most, to a "maximum period of [fourteen] days" for "one or more technical violations." *Id.* at 14.

---

incarceration and imposes a sentence within the statutorily permitted range. In such circumstances, a challenge to the trial court's exercise of its discretion to impose a sentence of total confinement would be a discretionary aspects of sentencing claim. *Cf. Commonwealth v. Weir*, 239 A.3d 25, 37 (Pa. 2020) (distinguishing between a "challenge to the sentencing court's authority to order restitution," which raises a non-waivable legality of sentencing issue, and a "challenge to the manner in which the sentencing court exercises that authority in fashioning the restitution," which implicates the discretionary aspects of the sentence). Thus, a claim that a court did not abide by the requirements of section 9771 differs from a claim that a court abused its discretion within the confines of that authority.

- 30 -

Seals argues that the limits in section 9771(c), as amended by Act 44, apply to his sentence because he was serving a term of probation with restrictive conditions, which the trial court then revoked. *See id.* at 7-10. Seals acknowledges that "he was in a problem-solving court subject to 42 Pa.C.S. § 916." Seals' Brief at 9. He maintains, however, that a "problem-solving court is only authorized as a sentence" if it is considered a CIP. *Id.* His argument in this regard is best summarized as follows:

- originally, the trial court had the option to sentence him, inter alia, to total confinement or probation pursuant to 42 Pa.C.S. § 9721;

- as a DUI offender, he was subject to a mandatory minimum sentence of incarceration, but the trial court avoided imposing that sentence by having him undergo a drug and alcohol assessment and participate in a CIP, which it could do pursuant to *Commonwealth v. Williams*, 941 A.2d 14, 21-22 (Pa. Super. 2008) (en banc);

- a CIP constitutes restrictive conditions of probation pursuant to 42 Pa.C.S. § 9804;

- probation with restrictive conditions is a type of probation pursuant to 42 Pa.C.S. § 9763(d);

- 42 Pa.C.S. § 9771(c), which Act 44 amended, applies to orders of probation; and

- pursuant to section 9771(c), the maximum penalty of total confinement permitted upon revocation of probation for a first technical violation of probation is fourteen days.

*See* Seals' Brief at 7-9.

Seals further contends that the trial court erred by applying the prior version of section 9771, which did not limit the maximum length of confinement upon revocation of probation for technical violations. *Id.* at 11-13, 20-22. As he was resentenced after the effective date of Act 44, Seals

states it therefore applied to the trial court's resentencing decision. *See id.* at 11-12.

The trial court defended its application of the prior version of section 9771, contending that it "was in effect at the time of [Seals'] sentencing" and that the amended version applied "only to cases where the defendant was sentenced or resentenced to probation on or after June 11, 2024." Trial Court Opinion, 11/19/2024, at 3, 7. Because it did not resentence Seals to probation, the trial court asserts that it was entitled to apply the prior version of the statute. *Id.* at 7. Under the prior version, the trial court explained, it properly sentenced Seals to a term of incarceration because probation "had not successfully curbed [Seals'] drug-related activities," Seals needed "rehabilitation and treatment," and his violations "indicated that he was likely to commit further drug offenses if he was not imprisoned." *Id.* at 7, 8.

The Commonwealth likewise argues that Act 44 does not apply to Seals' sentence, but offers a different approach. It contends that Act 44 does not apply to Seals' sentence because it is a "DUI Court sentence" with "restrictive conditions" in lieu of total confinement. *See id.* at 9, 11-12, 16, 25. Act 44, the Commonwealth argues, applies only to "probation sentences," and a DUI Court sentence is not a "probation sentence" even if a "component" includes "probation with restrictive conditions." *See id.* at 11, 13. It maintains that DUI Court sentences are fully authorized by section 916, and a DUI Court sentence is not a CIP program governed by section 9804 because neither

section contains language expressly or implicitly connecting the two. ***See id.*** at 12.

In that same vein, the Commonwealth contends that Act 44 does not apply to problem-solving court sentences, CIP sentences, or sentences with restrictive probation because it has no express language stating that it does. ***See id.*** at 10-11; ***see also id.*** at 18 (emphasizing the General Assembly's failure to include express language in Act 44 regarding CIP and problem-solving courts). Instead, Act 44 applies to, and "was designed to set limitations" upon, what the Sentencing Guidelines refer to as "'non-confinement' probation sentences," which are sentences that do "not require a period of confinement to be satisfied by incarceration or restrictive conditions." ***Id.*** at 24 (citing 204 Pa. Code §§ 303.9, 303.12).

The Commonwealth further emphasizes that a problem-solving court participant is only entitled to the mitigating consideration received at sentencing if the participant successfully completes the program. ***Id.*** at 18. The trial court exercised its discretion to accept Seals into DUI Court so that he could undergo treatment instead of imposing the mandatory minimum sentence of twelve months of incarceration. ***Id.*** at 20. Having "violated the conditions of the DUI [C]ourt program," Seals has now forfeited the "mitigating consideration" of participating in the program. ***See id.*** The Commonwealth argues that the General Assembly could not have intended the maximum sentences identified in Act 44 to apply to problem-solving courts

because the limits would create a "loophole" that would allow a defendant to "willfully violate the terms of their problem-solving court sentence" in order to serve a fourteen-day maximum jail sentence in lieu of completing the program. *Id.* at 19.

Finally, the Commonwealth relies upon section 9771(c)(2)(iv)(B), which it contends "allows for a trial court to consider a problem-solving court as a sentencing alternative," upon revocation, which, in turn, "suggests that the underlying probation violation was not committed by a problem-solving court participant." *Id.* at 16.[22]

_____

[22] We note that the statutory language referenced by the Commonwealth in fact states that the statutory maximum sentences identified in section 9771(c)(2)(i) and (ii)

> shall not apply to the extent that a reasonable term of additional total confinement, not to exceed 30 days, is necessary to allow a defendant to either be evaluated for or to participate in:
>
> (A) a court-ordered drug, alcohol or mental health treatment program; or
>
> (B) a problem-solving court provided for in section 916 (relating to treatment courts).

42 Pa.C.S. § 9771(c)(iv). It does not, as the Commonwealth claims, identify a problem-solving court as a sentencing alternative at a resentencing hearing; rather, it permits an extension of time for a sentence of incarceration for a defendant to satisfy prerequisites of participation in a treatment program or problem-solving court.

<u>Analysis</u>

We review a challenge to the legality of a sentence de novo and with a plenary scope of review. ***Commonwealth v. Prince***, 320 A.3d 698, 700 (Pa. Super. 2024). Where, as here, our statutory analysis concludes that the trial court's authority is "preconditioned on the finding of a triggering fact," the "legality of sentence claim includes our de novo review of whether the requisite fact exists." ***Id.*** at 706. To the extent that our analysis "requires us to engage in statutory interpretation," that too "presents a question of law," ***id.*** at 703 (citation omitted), of which we engage in a de novo review. ***Crosby***, 329 A.3d at 1148-49.

As discussed above, section 9771(c) sa trial court's authority to impose a sentence of total confinement upon revocation of probation, imposing a presumption against incarcerating a technical violator. 42 Pa.C.S. § 9771(c). Total confinement is an option for a resentence "only if" subsections (i), (ii), or (iii) of section 9771(c)(1) are satisfied. ***Id.*** § 9771(c)(1)(i)-(iii)(A)-(F). Thus, to determine whether the trial court exceeded the bounds of section 9771(c), as Seals contends, we must first consider (1) whether section 9771(c) applies to sentences connected to the specialized jurisdiction of a problem-solving court, such as Lebanon County's DUI Court; and (2) if section 9771(c) applies, whether the version amended by Act 44 is applicable to Seals' case.

*Problem-Solving Courts*

A DUI court, like the one in Lebanon County, is a problem-solving court that is authorized by the following statutory language:

> The court of common pleas of a judicial district and the Municipal Court of Philadelphia may establish, from available funds, one or more problem-solving courts which have specialized jurisdiction, including, but not limited to, veterans courts, drug courts, mental health courts and driving under the influence courts, whereby defendants are admitted to a court-supervised individualized treatment program. The court may adopt local rules for the administration of problem-solving courts and their related treatment services. The local rules may not be inconsistent with this section or any rules established by the Supreme Court.

42 Pa.C.S. § 916(a).

Thus, the General Assembly has authorized our courts of common pleas to create, fund, promulgate rules for, and administer one or more problem-solving courts with specialized jurisdiction over matters involving certain classes of defendants. *See Commonwealth v. McCabe*, 265 A.3d 1279, 1291 (Pa. 2021) ("[p]roblem-solving courts… are designed to provide funding and programing to afford individualized treatment to offenders with issues that have contributed to their criminal conduct"). Apart from requiring that defendants must be admitted to a court supervised individualized treatment program and providing that any local rules promulgated by the county court must be consistent with section 916 and any rules created by the Supreme Court, the statute does not prescribe terms of administration or procedure. *See id.*; *cf.* 42 Pa.C.S. § 3807 (detailing requirements and procedure for ARD program, including consequences of defendant's failure to comply with

program); 35 P.S. §§ 780-117 (detailing requirements and procedure for probation without verdict in Controlled Substances Act for drug dependent, nonviolent offenders, including consequences of defendant's violation of term or condition of probation), 780-118 (providing requirements and procedure for disposition in lieu of trial or criminal punishment in Controlled Substances Act for drug dependent, nonviolent accused offenders willing to undergo treatment).

Instead, section 916 places the responsibility upon, and gives the freedom to, each court of common pleas/municipal court to design, implement, and administer problem-solving courts and their related treatment services. *See id.*; *see also Commonwealth v. McCabe*, 230 A.3d 1199, 1203–04 (Pa. Super. 2020), *aff'd*, 265 A.3d 1279 (Pa. 2021) (recognizing that problem-solving courts are "implemented at the county level" in conjunction with "an accreditation program approved by our Supreme Court").[23]  Section

---

[23]  The Supreme Court-appointed statewide coordinator and its supporting interdisciplinary and interbranch advisory committee's role is limited to promoting and coordinating the problem-solving courts through developing model guidelines, encouraging their establishment, coordinating grant opportunities, and evaluating their effectiveness. *See id.* § 916(b)-(c); *see also* Michael C. Pollack, *Legislating Courts*, 92 UMKC L. Rᴇᴠ. 613, 617-18 (2024) (observing that statutes in approximately a dozen states, including Pennsylvania, provide broad discretion to the judiciary to establish and administer specialty courts).  The Administrative Office of Pennsylvania Courts Problem Solving Court Office ("AOPC Problem Solving Court Office") maintains a list of accredited programs in the Commonwealth.  To be accredited, the problem-solving court must submit documents related to its program and adhere to a standard with ten components and evidence-based best practices
*(Footnote Continued Next Page)*

916 provides great flexibility to county courts, permitting the implementation of problem-solving courts presentencing, post-sentencing, or even pre-adjudication. *See McCabe*, 230 A.3d at 1292 n.16 (observing that the statutory language "may be flexible enough to encompass ARD-equivalent programs, by placing the application, treatment, and completion components prior to a plea or adjudication of the charges).[24] Participation in a problem-solving court, therefore, is not itself a "sentence." Nor does section 916 authorize a deviation from the Sentencing Code and other sentencing statutes or the creation of any new sentencing procedures. *McCabe*, 265 A.3d at 1291-92.

Section 916 appears in Part II, Article C, Subchapter B of Title 42, which pertains to organization of the courts of common pleas in the Judicial Code; it is not part of the Crimes Code or Sentencing Code.[25] Section 916 is one of a trio of statutes pertaining to courts with specialized jurisdiction. *See* 42

---

known to the field. *See* AOPC Problem Solving Court Office "Accreditation Program Adult Drug and DUI Courts," May 7, 2015, available at https://www.pacourts.us/Storage/media/pdfs/20210215/023734-accreditationprogramforadultduianddrugcourts-002071.pdf (last visited Jan. 21, 2026).

[24] The problem-solving court in *McCabe* was Montgomery County's veterans' treatment court, which "defers proceedings after the adjudicatory disposition of the charges via a plea of guilty in order to provide specialized court-supervised treatment programing to qualifying defendants before sentencing." *McCabe*, 265 A.3d at 1287.

[25] Each judicial district has one court of common pleas. 42 Pa.C.S. § 911(a).

Pa.C.S. §§ 916 (problem-solving/treatment courts), 916.1 (commerce courts), 917 (housing courts). In each, the General Assembly authorizes the court of common pleas of each judicial district to establish, fund, adopt local rules for, and administer the courts with specialized jurisdiction and, in the case of housing and treatment courts, their related services. *See id.* Section 916, like its counterpart specialized jurisdiction courts, simply allows for specialization in the common pleas court's original jurisdiction, and does not confer any judicial powers beyond those that exist at law already. *Accord Penn Sycamore Apts. Inc. v. Brooks*, 346 A.3d 768, 775-77 (Pa. Super. 2025) (holding that once housing court, a specialty court within the Civil Division of the Court of Common Pleas of Allegheny County, was divested of jurisdiction, it had no power to devise equitable outcome in an effort to avoid tenant's eviction and ensure landlord's payment).

*Lebanon County's DUI Court*

Recognizing that each court of common pleas has the ability to craft its treatment court and associated services within the confines of section 916, we turn to Lebanon County's DUI Court in particular. Our review of the record, the parties' briefs, and the trial court opinion contains no notation of or citation to any local rules governing Lebanon County's DUI Court or its related treatment program, and we did not locate any through our independent research. As such, we are left to presume that Lebanon County has opted not to create any. The parties also do not specify any specialized terms and

conditions of participating in DUI Court and the certified record likewise does not contain any, despite indications that the program is administered by the district attorney's office and met accreditation standards, and the references in Seals' sentencing order to "requirements of the DUI Court Program" and "requirements presented by the DUI Court Treatment Team and as required by DUI Court Contracts[.]" Trial Court Order (1425-2022), 2/21/2024, at i.[26]

---

[26] Publicly available information indicates that the Lebanon County Court of Common Pleas established a DUI treatment court in response to legislation that increased penalties for DUI in 2004. *See* "DUI Court Program," available at https://www.lebanoncountypa.gov/departments/criminal-justice-advisory-board/d-u-i-court-program (last visited Jan. 21, 2026). AOPC Problem Solving Court Office's list of accredited programs indicates that Lebanon County's DUI Court received accreditation in December 2014. *See* Problem Solving Courts as of May 6, 2024, available at https://www.pacourts.us/Storage/media/pdfs/20211025/210629-problemsolvingcourtslist-asof10.25.21.pdf (last visited Jan. 21, 2026). Lebanon County's DUI court program is administered by the district attorney's office. *See* "Program Information," available at https://www.lebanoncountypa.gov/departments/da (last visited Jan. 21, 2026). The articulated goal of the DUI court is "to address the cycle of alcoholism and addiction, to protect the public, and to provide more structured implementation of treatment required by the [2004 legislation]." *See* "DUI Court Program," available at https://www.lebanoncountypa.gov/departments/criminal-justice-advisory-board/d-u-i-court-program (last visited Jan. 21, 2026). The trial court's website describes Lebanon County's DUI Court as presenting "a heightened level of judicial involvement and intensive probation supervision coupled with rigorous treatment to address addiction." *Id.* Program participants have "direct and frequent contact with the D.U.I. Court Treatment Team Members," which consists of the treatment court judge, a DUI coordinator from the district attorney's office, a probation officer, a public defender, and representative from a county drug and alcohol commission. *Id.* In addition to regular meetings with the team, "[t]here will be judicial interaction and intervention at the beginning and end of the D.U.I. Court process." *Id.* According to the district attorney's website, the offender applies by sending a
*(Footnote Continued Next Page)*

Nevertheless, even if Lebanon County adopted local rules or otherwise set forth terms and conditions applicable to Seals, neither the rules nor terms and conditions could not provide for a procedure not authorized by law. 42 Pa.C.S. § 916(a); *McCabe*, 265 A.3d at 1282.

In the absence of local rules governing Lebanon County's DUI Court, and without further information in the certified record concerning the particular terms and conditions of Seals' court-supervised individualized treatment program, we have before us Seals' original sentencing order. The order indicates that, as a penalty for DUI, the trial court sentenced Seals to a term of probation for five years "with Lebanon County Probation Services" and "subject to" specified "restrictive conditions." Trial Court Order (1425-2022), 2/21/2024, at i. DUI Court is referenced three times: in a notation in the caption of the order stating "(DUI COURT) SENTENCING – PROBATION," and in paragraphs one and two of the order, each of which are enumerated "restrictive conditions" referenced above. *Id.* Restrictive condition number one specifies, inter alia, that Seals "shall serve the first 12 months on

_____

written application to a DUI Court Administrator at the district attorney's office. *See* "Program Information," available at https://www.lebanoncountypa.gov/departments/da (last visited Jan. 21, 2026). Several orders continuing the case refer to Seals' pending application to DUI Court, and Lebanon County's website contains a form application for DUI Court, so there appears to be a procedure in Lebanon County to select participants for DUI Court. *See* Trial Court Orders, 9/29/2023, 12/1/2023, unnumbered; Specialty Court Application, available at https://www.lebanoncountypa.gov/getmedia/9a1edb5a-459c-45ae-9ab3-3679034ec7bc/Specialty-Court-Application.pdf (last visited Jan. 23, 2026).

restrictive probation with the Lebanon County DUI Court Program" and "shall comply with all the requirements of the DUI Court Program." *Id.* Restrictive condition number two specifies, inter alia, that he "shall comply with all of the following conditions," and condition (a) is "[c]omplete all requirements presented by the DUI Court Treatment Team and as required by the DUI Court Contracts." *Id.* Further "RULES OF SUPERVISION" and "SPECIAL CONDITIONS" are listed, but none reference DUI Court. *Id.* The sentencing orders docketed in Seals' other two cases do not include DUI Court and only reference probation. *See* Trial Court Orders (869-2023, & 1060-2023), 2/21/2024, at i-ii. Thus, by the plain text of Seals' sentencing order in his DUI case, Lebanon County's DUI Court is implemented post-sentence.

*Interplay Between Problem-Solving Courts and DUI Sentencing Schemes*

As discussed earlier, the trial court has discretion to sentence a defendant, but only within the confines of the authority provided to it by the General Assembly; otherwise, the sentence is an illegal sentence. *See supra* at 9; *see also* 42 Pa.C.S. §§ 9703, 9721(a), 9771(b); *Prinkey*, 277 A.3d at 560-62. Section 9721 prescribes five sentencing alternatives, none of which include sending a defendant to a problem-solving court or its programing. *See* 42 Pa.C.S. § 9721(a); *see also Commonwealth v. Kenney*, 210 A.3d 1077, 1081 (Pa. Super. 2019) (interpreting section 9721(a) as providing sentencing court with discretion to choose amongst the alternatives unless a mandatory sentence applies). Section 916 does not create an additional sentencing

alternative. *See generally id.* § 916; *see also Reibenstein v. Barax*, 286 A.3d 222, 230 (Pa. 2022) ("We can no more interpret a statute in a way that adds language than we can read it in a way that renders any statutory language ineffective.").

In the case at bar, the trial court originally sentenced Seals in this matter for DUI (his second) and DUS (his third), which carry mandatory minimum sentences of incarceration under the Vehicle Code. *See* 75 Pa.C.S. §§ 1543(b)(1)(iii) (version effective Dec. 24, 2018 to Jan. 2, 2024), 3803(b)(4), 3804(c)(2)(i)-(iv), (e). The sentencing court could avoid imposing the mandatory minimum penalty, but only by following another sentencing alternative available under section 9721(a). *Commonwealth v. Popielarcheck*, 190 A.3d 1137, 1144 (Pa. 2018).

Prior to 2019, section 9721(a) listed CIP as an enumerated sentencing alternative. *Commonwealth v. Hoover*, 231 A.3d 785, 790 (Pa. 2020) (Opinion Announcing the Judgment of the Court). CIP allows "eligible offenders"[27] to avoid incarceration and instead be placed in a community-

---

[27] An eligible offender is defined as follows:

> Subject to section 9721(a.1) (relating to sentencing generally), a person convicted of an offense who would otherwise be sentenced to a county correctional facility, who does not demonstrate a present or past pattern of violent behavior and who would otherwise be sentenced to partial confinement pursuant to section 9724 (relating to partial confinement) or total confinement pursuant to section 9725 (relating to total confinement).

*(Footnote Continued Next Page)*

based "residential or nonresidential program." 42 Pa.C.S. § 9802. The County Intermediate Punishment Act permits adoption of a plan for the implementation and operation by counties of CIP programs. *See* 42 Pa.C.S. § 9806(a).[28] Before section 9721(a) was amended in 2019, the Supreme Court explained:

> The General Assembly authorized the availability of CIP sentences "to give judges another sentencing option," specifically, one that "would lie between probation and incarceration with respect to sentencing severity; to provide a more appropriate form of punishment/treatment for certain types of non-violent offenders; to make the offender more accountable to the community; and to help reduce the county jail overcrowding problem while maintaining public safety."

*Popielarcheck*, 190 A.3d at 1144 n.6 (quoting *Williams*, 941 A.2d at 24).

Following legislative changes in 2019, counties may still establish a CIP program, but CIP sentences are now expressly designated as probation with restrictive conditions governed by section 9763(c) (regarding restrictive DUI

---

18 Pa.C.S. § 9802. Certain crimes not relevant here are expressly excluded from eligibility. *See id.*

[28] Based upon publicly available information on Lebanon County's website, we observe that the Lebanon County Criminal Justice Advisory Board approved a Lebanon County Intermediate Punishment Treatment Program Plan for 2024-2025 ("IP Plan") on April 8, 2024. This plan classifies its DUI Court program as a CIP program imposed as restrictive conditions of probation. *See* IP Plan, 4/8/2024, at 4-5, available at https://www.lebanoncountypa.gov/getmedia/119dda44-a748-48cc-b670-11d116018a7a/IP-Plan-for-2024-2025.pdf (last visited Jan. 23, 2026). Because neither party cites to this plan and Lebanon County's board adopted it—or at least this version of it—after Seals was sentenced in the underlying cases, we do not consider the IP Plan as part of our analysis.

probation conditions) or (d) (regarding restrictive conditions of probation generally). *See* 42 Pa.C.S. § 9804(a); *Hoover*, 231 A.3d at 790.[29] Probation with restrictive conditions, whether general or DUI-specific, is a subtype of probation. *See* 42 Pa.C.S. § 9763(a). "An order of probation," of course, is a designated sentencing alternative. 42 Pa.C.S. § 9721(a)(1).

The Sentencing Guidelines provide that restrictive DUI probation conditions may be used in lieu of incarceration to satisfy the mandatory minimum sentencing requirements for certain DUI and DUS convictions. *See* 204 Pa. Code §§ 303.9(i) ("The court may use Restrictive DUI probation conditions pursuant to § 303.12(a)(6) or a combination of confinement and restrictive DUI probation conditions to satisfy the mandatory minimum requirement as provided by law."), 303.12(a)(4)(v), (a)(6) (providing that restrictive DUI probation conditions may be used in lieu of incarceration to satisfy the mandatory minimum sentencing requirements of certain DUI and DUS convictions).[30] In *Popielarcheck*, our Supreme Court interpreted prior versions of section 9763 of the Sentencing Code, section 9804 of the County

_____

[29] One incentive for a county to establish a CIP program is funding, as "[o]nly programs that meet the requirements of restrictive conditions of probation under section 9763(c) or (d) and are certified in accordance with section 2154.1(b) shall be eligible for county intermediate punishment program funding." *See* 42 Pa.C.S. § 9804(b)(2).

[30] This Code provision was enacted based upon the legislative mandate directing the Pennsylvania Commission on Sentencing to adopt guidelines to identify offenders who would be eligible and appropriate for probation with restrictive conditions. 42 Pa.C.S. § 2154.1.

Intermediate Punishment Act, and the Sentencing Guidelines, and concluded that they authorize CIP for DUI and DUS offenses notwithstanding the Vehicle Code's mandatory minimum incarceration sentences. **Popielarcheck**, 190 A.3d at 1141-46.

Although CIP is now under the umbrella of probation for sentencing purposes, and the language of the statutes has been amended, what was true in **Popielarcheck** remained true when Seals was sentenced in February 2024: a sentencing court could avoid the mandatory minimum sentence under the Vehicle Code **if** it abided by section 9763 and imposed probation with restrictive conditions through a CIP program. **See** 42 Pa.C.S. 9721(a.1) (providing that choice of sentencing alternatives in subsection (a) shall not apply where a mandatory minimum sentence is otherwise provided by law, "[u]nless specifically authorized under section 9763"), 9763(a) (requiring court to "consider" sentencing guidelines regarding imposition of restrictive conditions; if court imposes restrictive DUI probation conditions pursuant to subsection (c), the term must be equal to or greater than mandatory minimum).

*Seals was Sentenced to Probation*

Based upon the information available to this Court in the certified record, the trial court sentenced Seals on February 21, 2024, to an "order of probation," **see** 42 Pa.C.S. § 9721(a), which is subject to restrictive conditions, **see id.** § 9763(c)-(d), one of which is serving twelve months of

probation with the DUI Court Program and following its requirements, and another is complying with all requirements presented by the program's team and required by its contracts. Although Seals was otherwise subject to a mandatory minimum sentence of incarceration under the Motor Vehicle Code, the trial court exercised its discretion to impose a sentence in connection with a county intermediate punishment program, which constitutes probation with restrictive conditions. Nothing about a requirement that he participate in a problem-solving court program inherently transforms the nature of the sentence. Because Seals was sentenced to an "order of probation," and nothing within section 9771 exempts probation with restrictive conditions from its requirements, section 9771 applies to the revocation of that order and the subsequent resentence imposed. *See* 42 Pa.C.S. §§ 9721(a), 9763(c), 9771.

*Applicability of Act 44 to Seals' Sentence*

We reject the trial court's contention that Act 44 applies only to defendants who were sentenced or resentenced to probation on or after June 11, 2024, and the corollary that Act 44 does not apply here because Seals was resentenced to a term of total confinement. *See* Trial Court Opinion, 11/19/2024, at 3, 7. By its express terms, Act 44 does not limit its application to individuals resentenced to probation. *See* Act of Dec. 14, 2023, P.L. 381, No. 44, § 5(1)-(2). Nor would such an interpretation make logical sense, as Act 44 plainly restricts a trial court's authority to impose a term of total confinement upon resentencing. *See* 42 Pa.C.S. § 9771(c). Moreover, the

- 47 -

modifications made by Act 44 to the Sentencing Code extend beyond probation resentencing.

Uncodified provisions of Act 44 state that it "shall apply" to two groups: (1) "individuals sentenced or resentenced on or after the effective date of this section"; and (2) except for section 9774.1,[31] "individuals sentenced or resentenced prior to the effective date of this section." **See** Act of Dec. 14, 2023, P.L. 381, No. 44, § 5. Stated another way, by its express terms, Act 44's amendments (other than section 9774.1) "are to be construed retroactively," as "clearly indicated under the provisions of the statute." **Commonwealth v. Shaffer**, 734 A.2d 840, 843 (Pa. 1999) (citation omitted).

At the General Assembly's directive, Act 44's amendments codified at 42 Pa.C.S. § 9771(c) apply to Seals because he was resentenced after the effective date of Act 44. But even if he had been sentenced prior to the effective date of Act 44, the General Assembly makes clear that it would still have applied to him. Thus, the trial court erred by applying the prior version of section 9771(c) when imposing Seals' resentence.[32]

---

[31] **See supra**, note 16.

[32] We are perplexed by the Commonwealth's argument that application of Act 44 to the circumstances of this case somehow creates a "loophole" such that problem-solving court participants will "willfully" violate the terms of their probation so they can serve a fourteen-day sentence of incarceration. **See** Commonwealth's Brief at 19-20. The Commonwealth's argument suggests
*(Footnote Continued Next Page)*

Because the trial court found that the amended version of section 9771(c) did not apply to Seals' resentencing, it did not make any findings as to whether Seals' technical violations satisfied the prerequisites to imposing a sentence of total confinement. *See* 42 Pa.C.S. § 9771(c)(1). Further, Seals' sentence of total confinement is far greater than the maximum authorized sentence for a first (or second) technical probation violation. *See id.* § 9771(c)(2)(i). As the trial court exceeded the authority bestowed upon it under the applicable version of section 9771(c) to impose a sentence of total confinement following the revocation of Seals' probation, his sentence is illegal. Accordingly, we vacate Seals' judgment of sentence and remand to

_____

(and the attorney representing the Commonwealth at oral argument confirmed) its concern is that a defendant will have no further obligations or supervision after serving the fourteen-day sentence. To the contrary, section 9771 prescribes a procedure for revocation of probation, following which the trial court may resentence the defendant to any sentencing alternative that was available at the time of initial sentencing, with only a sentence of total confinement limited by subsection (c). The defendant remains under the jurisdiction of the court of common pleas and is still subject to continued or increased penalties (including, for example, a fresh term of probation with restrictive conditions or partial confinement), and, depending upon the rules applicable to the treatment court or conditions of the treatment court program, removal from treatment court. Further, for habitual technical violators whose violations satisfy the prerequisites of section 9771(c)(1), the trial court may impose a sentence of total confinement between the mandatory minimum and maximum sentence upon a third technical violation. 42 Pa.C.S. § 9771(c)(2)(iii); *see also id.* § 9771(b) ("The attorney for the Commonwealth may file notice at any time prior to resentencing of the Commonwealth's intention to proceed under an applicable provision of law requiring a mandatory minimum sentence.").

the trial court for resentencing pursuant to the amended version of section 9771.

## Conclusion

A challenge to the trial court's authority to impose a sentence pursuant to section 9771(c) is a legality of sentencing claim, and we overrule **Schutzues** and **Slaughter** to the extent they hold otherwise. Furthermore, 42 Pa.C.S. § 9771, as amended by Act 44, applies to revocation of probation with restrictive conditions imposed in connection with treatment courts (previously known as problem-solving courts). Finally, all provisions of the Sentencing Code amended by Act 44 apply to defendants who were sentenced or resentenced on or after June 11, 2024, and, with the exception of the portion of Act 44 codified at 42 Pa.C.S. § 9774.1, apply retroactively to defendants sentenced or resentenced before that date.

Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.


Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary


Date: 02/17/2026